## Hall v. Hall, Appellant.

Argued October 22, 1929. Before
PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP,
CUNNINGHAM and BALDRIGE, JJ.

430

432

434

*C. Coe Farrier,* for appellant.—The allegation raising the question of the invalidity of the suit by reason of its being contrary to public policy is sufficient to take the case to the jury: Miller v. Miller, 284 Pa. 414; Irvin v. Irvin, 169 Pa. 529; Reynolds v. Richards, 14 Pa. 205; Shannon's Estate, 289 Pa. 280; Com. v. Glennon, 92 Pa. Superior Ct. 94.

Plaintiff is estopped to enforce this agreement by her representations upon which defendant relied: Wagner v. Marcus, 288 Pa. 579.

*Joseph M. Smith* and *John L. Burns,* for appellee.
—The contract is not contrary to public policy: Hutton
v. Hutton, 3 Pa. 100; Dillinger's Appeal, 35 Pa. 357;
Scott's Estate, No. 2, 147 Pa. 102; Shimp v. Gray,
41 Pa. Superior Ct. 542; Muhr's Estate, 59 Pa. Su-
perior Ct. 393; Rodenbaugh v. Rodenbaugh, 17 Pa.
Superior Ct. 619.

OPINION BY LINN, J., December 12, 1929:

In two suits, one against her former husband and one
against his father, plaintiff has judgment for want of
sufficient affidavits of defense; both defendants have
appealed; as their appeals were heard in one argu-
ment, they will be disposed of together.

On February 26, 1927, husband and wife (parties in
No. 240, October Term, 1929), executed an agreement
of separation; (a copy will be found in the reporter's
statement). Paragraph 8 provides: "The husband
covenants and agrees that he will, during his lifetime,
during such time as they live separate and apart, the
wife remaining unmarried, pay to the wife for her
separate maintenance and support and for her separate
use and benefit, the sum of $100 per month, beginning
the fifth day of March, 1927, and monthly thereafter,
which payments shall terminate on the death of the
husband, the living together of the parties or the re-
marriage of the wife during the lifetime of the hus-
band." Paragraph 12 states: "It is further agreed
by the parties hereto that this agreement shall end,
cease and terminate upon the death of the husband, the
resumption of marital relations of the parties hereto,
or the remarriage of the wife during the lifetime of
the husband."

In the statement of claim in No. 240 plaintiff avers
performance by both parties until November 5, 1928,
when, she alleges, defendant defaulted. She brought
suit March 7, 1929, and declared for the sums due up

to and including that payable March 5, 1929, a total of $450. She avers that she and her husband had not resumed marital relations, that she had not remarried and that he was still living.

In her suit against her father-in-law (appellant in 241, October Term, 1929), she makes substantially the same allegations and sues for breach of the contract of suretyship (see Act of July 24, 1913, P. L. 971).

In the affidavit of defense (appeal No. 240), defendant denies that he agreed to support his wife "for an indefinite length of time, and it is averred that both parties contemplated bringing divorce proceedings forthwith. It is further averred that the agreement was entered into in substitution for alimony pendente lite during the pendency of the divorce proceedings." He then avers that pursuant to proceedings instituted by him, he was divorced "in the latter part of the year, 1927;" and "at the time of the making of the agreement both the party plaintiff and the defendant, Lincoln W. Hall, contemplated the institution of divorce proceedings and each contemplated remarriage after the granting of a final decree." We note from the pleadings that, though divorced in 1927 he continued making payments under his agreement until November, 1928.

Defendant in appeal No. 241 avers that plaintiff represented to him "that she intended to remarry immediately after the divorce decree was obtained, and on the faith of his representation, the defendant, J. Lincoln Hall, undertook to be surety for the payments during the pendency of the divorce proceedings; that in the latter part of the year of 1927, the plaintiff and Lincoln W. Hall, her husband, were divorced, at which time it became the duty of the plaintiff to remarry or otherwise relieve the defendant, J. Lincoln Hall of any responsibility for the payments under the agreement of February 26, 1927." He also avers "that

it was represented to him that the agreement was in substitution for alimony pendente lite during the prosecution of the divorce proceeding which the parties had in contemplation when the agreement was executed and it was represented to him by the plaintiff that she intended to remarry after the entry of a final decree in divorce almost immediately, at which time the payments under the agreement would cease to be payable. That the said representations were fraudulent and known to be fraudulent to the plaintiff and she had since the entry of the final decree in divorce neglected to remarry or in any other way releasing the defendant's principal from payments under the agreement.''

The contract on its face is lawful. It has been performed by plaintiff,—a fact that we must accept for present purposes: Miller v. Miller, 284 Pa. 414, 416. None of the contingencies specified in the contract on the happening of which payment was to cease, has occurred. Defendants' position—as stated in their affidavits—is that they are entitled to reform their contracts by eliminating paragraphs 8 and 12 quoted above, and substituting for them an earlier termination of liability than that specified in the writing. The rules governing the reformation of agreements are well settled in Pennsylvania, but defendants have averred no facts to which those rules could apply; there is nothing in the affidavit which suggests, let alone avers, that anything was omitted from the contract by fraud, accident or mistake, or that anything was stated in it which had not been agreed upon when it was executed and delivered. Even if, for present purposes, we considered that divorce proceedings were contemplated (in the language of the averment), and that the agreement was intended to provide for support pendente lite as averred, we should still have a declaration by defendants that the contract is lawful,

for it is not illegal to provide support pendente lite. Of course, if the consideration for a contract of separation is divorce or facilitating divorce by collusion the agreement is unenforceable. The affidavits do not aver that the consideration was agreement to obtain a decree of divorce or that either agreed to assist the other in obtaining one or in refraining from testifying or otherwise participating collusively. The averment is "both parties contemplated bringing divorce proceedings forthwith." The affidavit "must also be considered as asserting as strongly as possible everything defendant can say in [his] favor ......": Wright v. General Carbonic Co., 271 Pa. 332, 339. So reading the affidavits, the fact averred concerning divorce, is that both parties "contemplated" such proceedings. That is not an averment of agreement to obtain a divorce or for collusion with regard to it. The word "contemplated" implies no such meaning, as any dictionary will show; one of the common definitions of the word "contemplate" is "intend;" conditions may have become such that both parties thought themselves lawfully entitled to succeed in divorce proceedings, in consequence of which both may have intended to bring divorce proceedings without, however, intending to do anything illegal about it—indeed the presumption is that their intentions were lawful. People frequently change their intentions, and there is no implication that they may not change them. A contract providing for support in case of separation in such circumstances is not and has never been held to be unlawful in Pennsylvania.

The suggestion in appellants' briefs that the consideration for the contract is against public policy and therefore unlawful does not merit discussion because there is no averment in the affidavits of defense to support it. In Miller v. Miller, 284 Pa. 414, at 418 it was said: "Likewise, an arrangement tending to

facilitate the granting of a decree is invalid, and where collusion appears, as shown by a promise not to defend, nor to furnish evidence for the libellant, it cannot be sustained. However, if the facts negative this idea, a settlement for support or alimony will be upheld, though a divorce was in the minds of the parties (13 C. J. 464; 19 C. J. 92; King v. Mollohan, 60 Pac. R. 731, 61 Pac. R. 685 (Kan.), or the causes upon which the application is to be based are by stipulation limited: Irvin v. Irvin, supra. 'According, to the weight of authority, bona fide agreements relating to alimony or the adjustment of property rights between the husband and wife, though in contemplation of a divorce, will be upheld if not directly conducive to the procurement of a divorce': 9 R. C. L. 256. 'Thus, where a separation has been induced not by collusion but by the vicious conduct or disability of one of the parties without inducement or fault of the other, and it had furnished just grounds for legal separation, then a contract looking to a settlement of property rights and proper maintenance of the one not in fault is in no sense repugnant to public policy': 9 R. C. L. 257. And if an enforceable agreement has been made, the subsequent granting of a decree will not affect the rights acquired: 30 C. J. 1067; Muhr's Est., 59 Pa. Superior Ct. 393." See also Thommen v. Thommen's Inc., 95 Pa. Superior Ct. 17, 24.

No. 240, judgment affirmed.

No. 241, judgment affirmed.