## Eckles v. Sharp. No. 2

*Leon E. Sperling,* for plaintiff.
*Cadmas Z. Gordon, Jr.,* for defendant.

KUN, J., May 8, 1942.—This case presents a rather novel question. The action is by a minor child, through her mother and natural guardian, against her natural father, to recover arrearages under the terms of an agreement under seal for the support of the minor. The duty and the obligation of a natural father to support his offspring during minority is so fundamental that in the first instance one considers a suit of this kind somewhat extraordinary. The litigation poses the question as to whether under any circumstances the natural father of a child may be relieved from such an obligation so fundamental in our concept of organized society. More particularly, the question is whether the obligation assumed by defendant in the form of a written agreement under seal may be considered abrogated by the changed status of the parties. We take it that by no agreement or operation of any law or the decree of any court can the fact be altered that defendant is the natural father of the minor plaintiff. Regardless, therefore, of conditions and circumstances which might for a time in point of fact relieve defendant of the burden of sustaining his child during minority, if the conditions so change again that there is no fund or estate out of which to support the child, and there is left the alternative of having the child become a public charge or fastening the obligation again on the natural father of it, can anything have happened in the interim to discharge him of that obligation for all time, particularly

as in this case when he had previously assumed the obligation to do so by formal written agreement under his hand and seal? We think not. The agreement of defendant under consideration was executed by him in February of 1930 when, as stated therein, because of differences which had arisen between him and his wife the child was placed in the custody of its maternal grandparents. Therein defendant agreed to pay for the support, maintenance, and education of his daughter in the sum of $50 a month "to be paid on the first day of July, A. D. 1929" (though the agreement was not executed until February of 1930), and the first of every month thereafter until the child should be ten years old, after which "a greater sum per month must be paid" to be agreed upon between the parties. The agreement also provided for the payment in addition of "extraordinary bills" if they should occur. The child at the time of the agreement was of the tender age of three years. Defendant made only 16 payments over a period of 17 months from the date in the agreement as of which the payments were considered to start, of which only nine were made in the ten months following the execution of the agreement.

On December 19, 1932, about two years after defendant ceased making payments, the grandparents, with whom the child had been placed, adopted it by due legal proceedings, at which time they executed a release to defendant of his undertaking. Thereafter the grandparents died, one in 1934 and the other in 1936, apparently without leaving any estate from which the minor could be supported. The minor plaintiff is now living with her natural mother (who had been divorced from defendant) and, efforts to get defendant to fulfill his agreement proving ineffectual, the suit in this case was instituted.

We dismiss without comment the statement made in the brief filed for defendant, but which does not appear in the record, that defendant has stated his willingness

to make regular payments for the support and maintenance of his child and continues willing to do so, but denying the validity of the agreement. The fact is that he has made no such payments.

We will now consider the four defenses set up by defendant:

1. The agreement of February 1930 provided for permission to defendant to see his daughter at reasonable times. At the trial the following question was put to defendant by his counsel:

"Q. Dr. Sharp, did you at any time have any difficulty in enforcing that part of the contract relating to your visits to Patricia?"

Objection to this question was sustained by the court. Though the question was clearly objectionable on the mere form of it, the objection thereto was sustained on the more substantial ground that it was immaterial, as a reading of the agreement clearly discloses that the provision in it for leave to defendant to visit his child was in no sense of the term a condition precedent to the fulfillment of his obligation to support it but was merely a promise on the part of the grandparents, entirely independent of the paramount obligation of defendant to furnish the support for his minor child therein agreed to. Of the fact that he had a right to see his child there could be no possible question, and he could have through appropriate proceedings asserted his rights in that respect even to the extent of removing the child from the custody of the grandparents if they were found for any reason to be unfit to have further custody of it. He took no steps whatever in that direction. We find no merit in this contention aside from the important point that, according to the record, defendant himself was in default in the performance of the agreement in that he failed to pay the monthly payment of $50 for the support of the child due in April 1930, which was prior to the alleged refusal of the child's grandparents who are now dead. Where an act or event mentioned in a contract is not expressly made

a condition precedent, it will not be so construed unless such clearly appears to be the intention of the parties. In case of doubt as to whether the words create a promise or an express condition, they are to be interpreted as creating a promise: Britex Waste Co., Ltd., v. Nathan Schwab & Sons, Inc., 139 Pa. Superior Ct. 474 (1940) ; The Fame Insurance Company's Appeal, 83 Pa. 396, 411, 412 (1877) ; A. L. I. Restatement of Contracts §261.

2. The next defense set up by defendant is the release given by the grandparents of the minor to defendant during negotiations instituted by them for the adoption of the child. This defense is likewise without merit. At the trial the following question was put to defendant by his counsel: ·

"Q. What were the circumstances under which this release [which had been identified but not offered in evidence] was given to you by Mr. and Mrs. Eckles [the grandparents]?"

Objection to this question was sustained. Whatever the circumstances were under which the release was given by the grandparents to defendant, it could not have the legal effect of discharging defendant of his duty to his minor child assumed under his agreement under seal to support it. The daughter, plaintiff, is a third-party beneficiary of the contract and upon its execution obtained rights which could not be taken away or impaired by any later act of the father, the obligor, or by mutual agreement between the contracting parties such as a release: Brill v. Brill, 282 Pa. 276. The court in that case dismissed a similar contention made by defendant here and gave judgment for the benefit of the minor referred to in the agreement, though defendant there set up inter alia a denial of the paternity of the child, and notwithstanding the release given him by the child's mother at the time she received a lump sum in settlement. Likewise, in the case before us the release given by the grandparents to defendant

did not relieve him of his obligation to contribute to the support of the child plaintiff, the beneficiary named in the agreement.

3. The next defense set up by defendant is that the adoption of the minor by her grandparents by decree of the Orphans' Court of Lawrence County, in which the final decree was entered December 19, 1932, discharged defendant for all time of his obligation under the support agreement. We find no merit in this contention. It would not in any event be a defense to the whole claim because at the time of the entry of the adoption decree defendant was in default for over two years under his agreement. Our opinion, however, is that the adoption decree did not relieve defendant of any part of his obligation. It must be borne in mind that this is an action on an agreement under seal in which defendant undertook to pay for the benefit of his minor daughter $50 a month for support up to the time she became 10 years of age and thereafter a larger sum to be agreed upon. Having breached his agreement long before the child became 10 years of age, he did not, of course, at the time she reached that age agree upon any larger sum so the law will hold him to the payment at least of the smaller sum agreed by him to be paid. The term would be interpreted by any court to be during the minority of the minor plaintiff. The agreement is not made subject to any future contingencies as to any changed status of the parties thereto, certainly not as to the minor plaintiff, third-party beneficiary therein. The undertaking or obligation of defendant was absolute. Where an unqualified und unrestricted promise has been made by one person to another or for the benefit of a third, the changed status of the beneficiary cannot affect the obligation. While the question has not come up in this State following adoption proceedings, the principle nevertheless has been before the courts of this State in the closely analogous situation where husbands have in separation agreements undertaken to contribute named sums for the support of wives, and it has

been repeatedly held that such agreements are not terminated, and the husband-obligors are not discharged by the subsequent divorce of the parties: Schofield v. Schofield, 124 Pa. Superior Ct. 469, 472; Hall v. Hall, 97 Pa. Superior Ct. 429, 439; Miller v. Miller, 284 Pa. 414, 419; Sears' Estate, 18 D. & C. 319, 322; Muhr's Estate, 59 Pa. Superior Ct. 393, 398. See also 19 C. J. 180, §449, and 19 C. J. 250, §584.

When a child is adopted it is in a sense divorced from its parents, the extent being determined by the statute under which it was done. If, in a case of an absolute divorce between husband and wife, it is held that a prior agreement of the husband, made at the time of their separation, to support his wife is still in force, why should not a similar agreement of a father for the support of his child be held to be in force when it becomes necessary to do so, as where the adoptive parents have died without leaving an estate, or if they themselves become impoverished and may, perhaps, have to go to a poorhouse? Is the child then also to become a public charge while its natural father may be living in affluence? It is to be observed that in the case of an absolute divorce a change in the status of the parties is complete and final so that the position of the parties is as though they had never been married; whereas the adoption of a child by others cannot change the fact that the actual father of the child is still and always will be its natural father. There is nothing in the adoption statutes of this Commonwealth which even indicates, much less provides, that the natural father of a child adopted may not thereafter, if the circumstances and conditions require it, be called upon to support his natural child, aside from his having undertaken to do so under seal. As pointed out in Fisher v. Robison, 329 Pa. 305, 308:

"Adoption was not a common law act; it depends altogether on the statute, and, in this state, may be defined as taking the child of another in the manner pro-

vided by, and with the consequences specified in, the statute. Being in derogation of the common law, it has been strictly construed in order to carry out the legislative intention: . . ." (Citing cases.)

The Adoption Act of April 4, 1925, P. L. 127, sec. 4, merely provides that, after the preliminary requirements have been complied with, the court shall make a decree "that the person proposed to be adopted shall have all the rights of a child and heir of such adopting parent". In giving the following quotation from the opinion of the court in Cave's Estate, 326 Pa. 358, at page 366, "This severs the child from his natural family tree and engrafts him upon that of his new parentage 'for *all* purposes of inheritance,' " defendant underscores the word "all" to support his argument that the child in the adoption proceeding lost thereby all possible rights against its natural father, overlooking the significance of fact that the word "all" is qualified by the words which follow it: "purposes of inheritance". In other words, what the statute does in permitting a change in the legal custody of the child is to give it the right of inheritance from its adopted parents and their families and terminate it as to any inheritance from the natural parents of the adopted child or their families. The strict construction of the statute, however, as we are required to make it under the law, must limit that interpretation to the child's rights as to inheritance and can have no bearing, it seems to us, on the paramount duty of the natural father to give sustenance to his child during its minority, if it becomes necessary to call on him. It would require the most direct, specific, and unmistakable expression of a statute to relieve a natural father of such a social duty, as the few cases on the subject show.

As we stated at the beginning of this adjudication, this is a novel question in this State. However, it has been considered elsewhere. In Dwyer v. Dwyer, 366 Ill. 630, 10 N. E. (2d) 344, a child was likewise adopted

by its grandparents, after which one of them died and the other remarried and left the jurisdiction. Its natural mother then adopted the child and brought proceedings against its natural father for support. The highest court of appeals sustained the contention that the adoption statute in that State did not relieve the natural father of his duty to support his offspring if it becomes necessary, which ruling was adhered to by another appellate court in that State in a subsequent case: People, ex rel. Witton, v. Harriss et ux., 307 Ill. App. 283, 30 N. E. (2d) 169; although it was therein decided that by virtue of the statute there was no right on the part of the natural parents to visit the adopted child. In the former case the court said (10 N. E. (2d) 346) :

"The statute does not provide that an adoption relieves the natural parents of their duty to support their offspring. The only express provision of the statute as to the respective rights and duties of natural parents and their children is found in section 8, which deprives the natural parents of all their legal rights in respect to the child, and frees the child from any obligation to maintain or obey the natural parents. An adoption of a child does not work a complete severance . . . between the child and its natural parents. The duty of a parent to support his minor child arises out of the natural relationship, and while that duty may also be imposed upon the adoptive parents by statutory enactment, the natural parent may, if necessity arises, be required to perform that duty. The primary duty of the adoptive parents to support is in derogation of the general law, and it is for that reason that, as to the adopted child, the statute must be strictly construed [case cited]. The statute is not to be construed as relieving the natural parents from all obligation to support their minor children."

It is to be noted that this ruling was made by the Supreme Court of Illinois, notwithstanding the provision in the adoption statute of that State that "the nat-

ural parents of a child so adopted shall be deprived by the decree of all legal rights as respects the child, and the child shall be freed from all obligations of maintenance and obedience as respect such parents." In other words, while the statute frees the adopted child from the obligation of maintenance of its natural parents, the court held that the natural father was not freed of his common-law liability to support his child during minority when the necessity for so doing arose. There is no contrary ruling on principle. The case of Betz v. Horr, 276 N. Y. 83, 87, 11 N. E. (2d) 548, held the contrary specifically on the provision in the section of its domestic relations law relating to adoption that " 'thereafter the parents of the person adopted are relieved from all parental duties toward, and of all responsibility for, and have no rights over such a child, or to his property by descent or succession.' " A lower appellate court had ruled that, notwithstanding this express provision in the statute relieving the natural father of responsibility for the support of his child, it was against public policy to sustain such a provision. However, the highest court of appeals ruled that the matter of declaring the public policy of the State was with the legislature, and as "the wording of the statute and the intent and purpose of the Legislature seems to be clear and unambiguous courts are not privileged to read into the statute a different meaning, purpose or intent." This is the clearest indication that were it not for the express words of the statute relieving the natural parent from the duty of support, the court would have ruled otherwise in harmony with the views expressed by the Supreme Court of Illinois. There is no such provision in the adoption statute of this State, and the court cannot read it into the statute. All that the Pennsylvania statute does, as we have pointed out, is to alter the rights of the adopted child in respect to inheritance. There is nothing whatever said in it about relieving the natural father of the fundamental

obligation to support his offspring during minority should it become necessary.

What we have said on this branch of the case has reference to the common-law liability of a natural father to support his child during minority as it may possibly be affected by the adoption of the child by others. The claim before us, however, is not based on the common-law liability but on a written contract under seal executed by the father to contribute to the support of his child. While the legislature would probably have the authority to relieve the natural father of his common-law liability to support his child, as was done in New York, it has not done so in this State, and much less is there any basis for the contention that there is anything in the adoption statute of this State which relieves a natural father of his obligation to contribute to the support of his minor child undertaken by him in a contract under his seal. It is our opinion that, even in the face of such a statute relieving him of all future obligation to support his minor child, a natural father could undertake to do so by solemn contract under seal, and unless it by its own terms provided against such a contingency as future adoption of his child by others he would be bound by his contract. However, it is unnecessary to go so far in making the ruling in this case. There is no such provision in our statute, and we know of no legal principles which compel such an interpretation of it. The statute being in derogation of the child's rights at common law, it must be construed strictly, and even if there were any reason for doubt on the question, it would have to be resolved against the contention of the father that he has been relieved of his liability under his bond. Another thought may be added to the consideration of the question. What if, instead of the natural father, a total stranger bound himself under seal to contribute to the support of a child unconditionally, without qualification of any kind, would the fact

that the child is subsequently adopted by others relieve him of his obligation? We think not. We have discussed the question under this heading at some length only because defendant's counsel has so earnestly urged this defense on us. The action, however, being on defendant's contract, the real answer to this part of the defense is the same as the answer to the defense based on the release, heretofore considered. Defendant having bound himself for the benefit of the child plaintiff, nothing thereafter could be done by him or the other contracting parties, whether by release or arrangements for adoption, to deprive the third-party beneficiary of her rights under the agreement. (Cases supra.) It is our opinion that even a statutory provision expressly relieving a natural father of liability to support his child after adoption would not have the effect of abrogating the father's written agreement to support it, unless it was so conditioned. Our conclusion is that the adoption of the minor plaintiff by her grandparents in December of 1932 did not have the effect of abrogating the agreement of her father made in February of 1930 to contribute the sum of $50 a month toward the support, maintenance, and education as therein provided. Defendant's agreement is in full force and effect, and he is liable thereon.

4. The fourth and final defense of defendant is that the suit is barred by the statute of limitations, arguing that even if his agreement continued to bind him, after the entry of the decree of adoption in December of 1932, no action having been brought thereon within six years after the last payment made by him in November of 1930, his minor child lost all rights thereunder. Entirely aside from the fact that the agreement provides for payment of monthly instalments, so that if the statute of limitations could apply, it would nevertheless not bar an action for payments which fell due under the agreement within the six years prior to the institution of the suit, the defense fails in its entirety because the

154

contract sued on is under seal, as to which the statute has not run, and the statute expressly excepts infants from its operation (Act of March 27, 1713, 1 Sm. L. 76, sec. 5, 12 PS §35) ; and this exception makes no distinction between infants with, and those without, guardians: Fassitt v. Seip, 249 Pa. 576.

The court finds for plaintiff against defendant. The amount of the claim is $6,400. The interest to date is $2,491.47. Damages are assessed in the sum of $8,-891.47.