## Gillan *v.* Gillan, Appellant.

148

Submitted June 9, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Frank J. Niemiec* and *Maurice L. Epstein,* for appellant.

*Michael J. DeSisti,* for appellee.

OPINION BY CERCONE, J., September 22, 1975:

This appeal arises from a judgment in favor of Patricia A. Gillan in an assumpsit action against her former husband, Percy Gillan. The judgment was based upon Mr. Gillan's breach of a separation agreement clause which provided for his continued support of Patricia A. Gillan and, by its terms, survived the Gillans' New York divorce. Mr. Gillan brings this appeal alleging principally that the agreement was collusive insofar as the real consideration for the agreement was Mrs. Gillan's promise not to defend against his New York divorce action; and also, that enforcement of alimony agreements offends against Pennsylvania public policy. We disagree with these arguments and will affirm. The facts are as follows:

By September of 1969, appellant was desirous of dissolving his marriage of long standing. Announcing his desire to separate, appellant and his wife entered into a separation agreement which provided, inter alia, for the support of Mrs. Gillan and the two children of the marriage in the amount of $4600 per year for Mrs. Gillan and $2600 yearly for the children. The separation agreement also contained a clause which provided that the agreement should be incorporated into any absolute divorce decree terminating the marriage; but, in the event the agreement is not so incorporated, it should nevertheless survive the divorce. It is not contended that this first agreement was collusive.

By March of 1972 the parties agreed that no reconciliation of the marital differences was possible. They then decided to amend the separation agreement to more nearly conform to their interests. The precise reason for so doing formed the crux of the dispute below, Mr. Gillan contending that his wife threatened to contest the divorce unless he made certain concessions to her in the new agreement. Shortly thereafter, Mr. Gillan sued for a divorce which was granted without incorporating the agreement. Mrs. Gillan did not contest.

Mr. Gillan continued to perform all promises under the agreement, including support for his wife, from March of 1972 until June, 1974. He then discontinued his payments in support of his wife, and she brought and succeeded in her suit in assumpsit from which this appeal arises.

For the reasons which follow we find that New York law should be applied to determine the *validity* of the agreement in the face of appellant's charge that the agreement was collusive. On the other hand, the law of this Commonwealth shall be applied to determine its current *enforceability* against appellant in the courts of Pennsylvania.

The approach to choice of law in Pennsylvania has undergone a drastic change in the last decade. The cause of this metamorphosis was the promulgation of the American Law Institute's Restatement of Conflict of Laws, Second. The introduction to the new Restatement notes "the enormous change in dominant judicial thought respecting conflicts problems" which has resulted in "the jettisoning of a multiplicity of rigid rules in favor of standards of greater flexibility. . . ." The courts of this Commonwealth did not long ignore the trend and, in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1 (1964) overruled a substantial body of Pennsylvania case law and adopted the new Restatement's approach to conflicts problems. See also *Cipolla v. Shaposka*, 439 Pa. 563 (1970). Thus, it would be error for us to apply the old,

single reference rule that, all other considerations aside, the place where the contract became binding, or the place where it was to be performed, controls the choice of law.

The general provisions for choice of law are set forth in the Restatement, Second at Section 6:

"Choice-of-Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

 (a) the needs of the interstate and international systems,

 (b) the relevant policies of the forum,

 (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

 (d) the protection of justified expectations,

 (e) the basic policies underlying the particular field of law,

 (f) certainty, predictability and uniformity of result, and

 (g) ease in the determination and application of the law to be applied."

More particularly with respect to contracts, Section 188(1) provides:

"The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most signicant relationship to the transaction and the parties under the principles stated in §6."[1]

---

1. Section 188(2) sets forth the "contacts" which are usually significant in resolving a choice of law problem concerning a contract:

152

With respect to the question of whether the separation agreement should be held void as collusive, New York clearly has the greater interest, because it is universally accepted that the state of domicile of the parties, i.e., the state where the divorce is to be procured, has a pre-eminent interest in the preservation or dissolution of a marriage. The rule of law against collusive separation agreements is designed to protect that interest. See 2 Freedman, Law of Marriage and Divorce in Pennsylvania §409 (1957); Clark, Law of Domestic Relations 527-28 (1968). As Justice SHARSWOOD so eloquently stated many years ago in *Kilborn v. Field,* 78 Pa. 194, 195-196 (1875): "Marriage is a civil contract, but it is more, it is an institution of the state. Parties cannot rescind or dissolve it, as they may all other contracts, at their own mere will. . . . The libellant can no more buy the release or default of the respondent, than a defendant in a criminal prosecution can buy off the prosecutor and compound a felony."

Thus, any collusion which affected the separation agreement might also affect, if a collateral attack on this ground were permitted, the propriety or validity of the New York divorce. Obviously, since the integrity of New York's divorce law and the preservation of New York marriages is at stake, the law of New York should be applied to resolve this question. The new Restatement is in accord with this conclusion. As Comment e to Section 188 states:

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue."

"To be sure, in the absence of an effective choice of law by the parties, issues involving the validity of a contract will, in perhaps the majority of situations, be determined in accordance with the local law of the state of contracting."

Furthermore, there is a strong interest in "certainty" with regard to the separation agreements, and that interest would not be served if the validity of the agreement should vary on a state to state basis.

Having determined that New York law should apply to resolve the question of the validity of the agreement, the question then becomes first, whether New York permits the promisor on a separation agreement to raise collusion of the parties in order to avoid the contract; and, if so, whether appellant sufficiently proved such collusion to require the court below to set aside the agreement.

The majority rule on this question is that after the divorce, the parties may not raise collusion to vitiate a separation agreement if that agreement has become a part of the divorce decree. As Professor Clark states:

"A very different question [from the questions of fraud and duress] is presented when the separation agreement is attacked after the divorce on the ground that it was a collusive attempt to procure a divorce. The attacking spouse is then properly met by the argument that he has actively participated in the collusion and is in no position to ask the assistance of the court in avoiding the consequences of the bargain. This view is reinforced by the fact that usually the spouse who claims collusion is doing it only to avoid the financial consequences of the divorce decree."[2]

However, the separation agreement in the instant case was never made a part of the decree and, in such situations New York and Pennsylvania alike permit an at-

---

2. Clark, Law of Domestic Relations 571 (1968).

tack on the agreement based upon collusion. See *Flood v. Theising,* 82 N.E. 2d 790 (N.Y. App. 1948) ; *McDonald v. McDonald,* 239 N.Y.S. 2d 533 (1st Dep't 1930) ; *Kilborn v. Field,* supra; *Mathiot's Estate,* 243 Pa. 375 (1914).

Reaching the merits of appellant's defense, we find that the court below did not abuse its discretion in refusing to vitiate the agreement for collusion. Appellant's argument that the court erred is based upon the following testimony of Mrs. Gillan :

"A.  Do you mean that I would not give him a divorce, is that what you mean?

Q.  Yes.

A.  I didn't want to give him a divorce, no, not at first, not the first several months or couple years or anything like that. I was always hoping that things would work out.

Q.  So then on many occasions you told him you would not give him a divorce, is that not true?

A.  Well, I suppose so.

Q.  Now at the time that the second agreement was entered into, isn't it true that your husband signed it on one condition, and that condition being you would not contest the divorce?

A.  I'm not exactly sure how to answer this, but we decided at that time I guess it was no way it could work out, so I agreed to the divorce.

Q.  You agreed not to contest the divorce?

A.  Right.

Q.  And he in return agreed to enter into the agreement?

A.  I suppose so, yes.

Q.  Now the date was March the 4th, was it not?

A.  It was in March."

While this testimony indicates that the amended separation agreement was accepted contemporaneously with Mrs. Gillan's decision not to contest, the testimony does not establish that Mrs. Gillan would have contested had

it not been for Mr. Gillan's accepting the amendments. Her testimony principally establishes her resignation to the hopelessness of trying to reconcile her differences with Mr. Gillan. The original agreement itself, which was then more than two years old, may very well have needed some amendment simply because the parties were contemplating final divorce. Indeed, with regard to the payments to Mrs. Gillan, the amended provisions do not differ substantially from those in the original agreement, which no one suggests was collusive. Hence, the court could well have determined that no collusion was present and denied appellant's defense.

Appellant next maintains that, even if the separation agreement is valid, it is not enforceable in Pennsylvania because its provision for the payment of alimony after a divorce *a.v.m.* is contrary to the public policy of this state. Again, we disagree with appellant.

In *Silvestri v. Slatkowski*, 423 Pa. 498 (1966), our Supreme Court confronted a similar separation agreement insofar as the agreement provided for the payment of alimony until the wife should die or remarry. Therein, on the question of whether Virginia or Pennsylvania law should be applied with regard to the agreement which was incorporated in the Virginia divorce decree, the Court stated:

"It has long been the law in Pennsylvania that in matters relating to the enforcement of a contract or in matters concerning the remedy for breach of a contract, the lex fori, or the law of the place where such remedies are pursued applies." 423 Pa. at 501.

Since both appellant and appellee now reside in Pennsylvania so that it is the status of Pennsylvania citizens *inter se* that we are now to determine, there is no basis for applying New York law other than the relatively insignificant fact, at least to this issue, that the agreement was originally negotiated and agreed to in New York.

In any event, Pennsylvania public policy does not forbid the enforcement of post-nuptial support payments to the former wife. 3 Freedman, The Law of Marriage and Divorce in Pennsylvania §711 (1957). Indeed, this has long been the law even when the payments are expressly stated to be "alimony." *Blaker v. Cooper,* 7 S. & R. 500 (1822). See also *Miller v. Miller,* 284 Pa. 414 (1925) ; *Cavazza Estate,* 169 Pa. Superior Ct. 246 (1951). The fact that the Pennsylvania Divorce Law does not permit the provision of permanent alimony under ordinary circumstances,[3] does not require that we refuse to enforce a contract, validly entered between the parties, which provides for such payments. *Buswell v. Buswell,* 377 Pa. 487 (1954).

Finally, appellant contends that the court below erred in enforcing the agreement because the support of Mrs. Gillan is contingent upon her not remarrying. However, realistically speaking, it is very likely that Mrs. Gillan's need for supplemental income from Mr. Gillan will end if she should remarry. Hence, such a condition is sensible and inoffensive to the public policy of this state, so long as payments are reasonably related to the needs of the former wife. Indeed, if such a condition is not expressed in the agreement, the remarriage of the former spouse will not operate to relieve the promisor of his obligation of support under the agreement. *Miller v. Miller,* 284 Pa. 414 (1925) ; *Hall v. Hall,* 97 Pa. Superior Ct. 429 (1929). In the instant case, the support agreement of $350 per month is not so large as to constitute a substantial incentive for Mrs. Gillan not to remarry. Therefore, the court properly dismissed appellant's objection on this ground.

For all the foregoing reasons, the judgment is affirmed.

JACOBS, J., concurs in the result.

---

3. The Code does permit the payment of alimony in case of a divorce based upon insanity, in which case the insane spouse is entitled to support. Act of May 2, 1929, P.L. 1237, §45, 23 P.S. §45 (1955).