**Joel S. ARIO, Insurance Commissioner of the Commonwealth of Pennsylvania, in his official capacity as Liquidator of Reliance Insurance Company, Plaintiff**

v.

**UNDERWRITING MEMBERS OF LLOYD'S OF LONDON SYNDICATES 33, 205 AND 506, Defendants.**

Commonwealth Court of Pennsylvania.

Decided June 4, 2010.
Publication Ordered June 16, 2010.

Deborah F. Cohen, Philadelphia, for plaintiff.

Jonathan L. Swichar, Philadelphia, for defendants.

OPINION BY President Judge LEADBETTER.

In this action by the Liquidator for payment pursuant to a contract of reinsurance, the parties have filed cross-motions for summary judgment raising two issues: (1) whether the Liquidator's action is barred by the statute of limitations; and, if not, (2) whether late notice of the claim relieved the defendants, Lloyd's of London Syndicates 33 and 205 (Syndicates) of any obligation under the reinsurance contract.[1]

In 1998, Reliance Insurance Company, acting through the New York office of broker, J & H Marsh & McLennan, Inc. (Marsh), issued a commercial property insurance policy to Consolidated Edison (ConEd). Reliance promptly ceded its liability under the ConEd policy by entering into two facultative reinsurance agreements. One brokerage, AON, placed 20% of the reinsurance coverage with seven Lloyd's of London Syndicates and Marsh placed 80% of the reinsurance coverage with twelve Lloyd's of London Syndicates. As participants in the 80% of reinsurance coverage placed through Marsh, Syndicate 33 agreed to cover 16.6667% and Syndicate 205 agreed to cover 2.5%.[2]

Lloyd's of London operates as an insurance marketplace where separate Syndicates funded by individuals (known as "names") and by corporate entities (known as "corporates"), collectively "members," who may be located anywhere in the world, acting through managing agents, agree to insure certain risks. In placing the 80% portion of the reinsurance coverage, Marsh's New York office, acting as broker for Reliance, submitted to Marsh's London office the "reinsurance slip" containing the relevant information on the terms and conditions of coverage requested. Marsh's London office submitted the slips to the managing agents acting on behalf of various Syndicates and eventually forwarded to the New York office the cover note identifying the Syndicates willing to provide coverage, the terms thereof and the percentage of each Syndicate's participation.[3] The cover note states the premium for coverage as well as the policy limits, deductibles and insurable values in

---

1. The Liquidator also named Syndicate 506 as a defendant but subsequently withdrew the claim as to that Syndicate.

2. These are the percentages of coverage stated in the Complaint. However, the cover note attached to the Complaint states that Syndicate 33 covers 20.833333% and Syndicate 205 covers 3.125000%. The cover note attached to the Complaint, which is the only written statement of the agreed terms and conditions, is dated June 29, 1998 and purports to cancel and replace the cover note dated April 24, 1998.

3. The cover note is all the Syndicates point to by way of contract language. It does not specify a choice of law. As noted in *Koken v. Legion Insurance Company*, 831 A.2d 1196 (Pa.Cmwlth.2003) (single judge op.), *aff'd*, 583 Pa. 400, 878 A.2d 51 (2005), the contractual relationship between ceding companies and their reinsurers is often quite casual in nature, operating on a handshake rather than the "get it in writing" principle. In *Legion*, the court said: "It is quite unlike the contractual relationship between insurers and their policyholders that requires pre-approval of policies, exacting attention to coverage applications, notice obligations and the like." *Id.* at 1210 n. 25.

United States dollars. The Lloyd's underwriters agreed to classify the reinsurance as "U.S. Reinsurance" thereby bringing the reinsurance coverage within the ambit of the Lloyd's American Trust Funds under the supervision of the New York Insurance Department.[4]

On September 27, 1998, ConEd sustained damage at its Arthur Kill substation in New York as a result of a lightening strike. In 2000, Reliance paid $1,237,795.17 for damage to the Arthur Kill property. Thereafter, Reliance promptly sent notice of its claim for indemnity but directed it mistakenly to only AON, which was not the broker responsible for the portion of reinsurance provided by Syndicates 33 and 205 (Syndicates). Notice of the claim against the Syndicates should have been provided to Marsh as the broker responsible for the portion of the coverage provided by each of the two Syndicates.

Reliance was placed in liquidation in 2001 and did not identify the billing error on the reinsurance covering the Arthur Kill claim until 2008. After recognizing the mistake, the Liquidator provided notification of the claim. The Syndicates denied the claim as out of time and the Liquidator filed the present action. After the Syndicates filed an answer with new matter, asserting a statute of limitations defense, they filed the present motion for summary judgment, asserting that the cause of action accrued when the right to indemnification arose upon payment of the underlying claim in 2000 and the six year limitations period applicable in England had expired. The Syndicates further assert that even if not time barred, the cause

of action fails due to grossly late notice of the claim. The Liquidator cross-moved, asserting that the cause of action accrued when the Syndicates denied the claim in 2008 and the action was filed well within Pennsylvania's four year limitations period. The Liquidator further asserts that inasmuch as the reinsurance contract did not specify a time in which notice was required, the eight year delay in providing notice of the claim does not excuse the Syndicates performance under the reinsurance contract.

■ Summary judgment may be granted where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Swords v. Harleysville Ins. Co.,* 584 Pa. 382, 390, 883 A.2d 562, 566 (2005); *Moyer v. Rubright,* 438 Pa.Super. 154, 651 A.2d 1139, 1141 (1994). Here, there exists no dispute that the submitted claim is covered under the policy, that the Liquidator provided notice of the claim to the defendant Syndicates approximately eight years after payment to the original insured on the underlying claim and that the Liquidator filed the instant lawsuit within months of the Syndicates refusal to pay under the reinsurance contract. As to whether the action is time barred under the statute of limitations, the crux of the matter turns on when the cause of action accrued. If this occurred when Reliance paid on the underlying claim in 2000, the action is too late under any possibly applicable statute of limitations, and if the date of denial in 2008 triggered the limitations period, the action is timely under any applicable statute. When the cause of action

---

4. "The Lloyd's American Trust Funds are held for the benefit of all policyholders to whom an individual Lloyd's Underwriter is liable in the United States." Syndicates' Reply Brief at 28 [citing *Int'l Surplus Lines Ins. Co. v. Certain Underwriters & Underwriting Syndicates of Lloyd's of London,* 868 F.Supp. 923, 926 (S.D.Ohio 1994) ]. The Trust Fund in the United States serves to qualify the Syndicates as accredited reinsurers within various jurisdictions in the United States, including New York.

accrued and, thus, whether it is barred is purely a question of law that may be decided on summary judgment. However, whether the delay in providing Syndicates with notice of the claim excuses their performance under the contract is a fact-dependant question.

### Statute of Limitations

In their briefs, the parties agree that the applicable statutory limitations period must be determined under Pennsylvania's borrowing statute, which provides that, "the period of limitations applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa.C.S. § 5521(b). The parties disagree as to where the cause of action arose and what occurrence triggered the limitations period.

In a confounding analysis, the Syndicates begin their argument with the assertion that:

When Defendants rejected Plaintiff's claim for indemnity through its representatives physically located in England, Plaintiff's cause of action accrued in England. It is undisputed here that "the final significant event" essential to Plaintiff's breach of contract claim (the denial by Defendants of Plaintiff's request for reinsurance), the place in which the reinsurance agreement was made between the insurance intermediaries and Defendants, and all other events relevant to this matter occurred in England.

Syndicates' Brief at 15. Having apparently accepted the premise, also asserted by the Liquidator, that the action accrued when payment of reinsurance was denied, the Syndicates then nevertheless point to four British cases as support for the different assertion that the cause of action accrued in 2000 when Reliance paid ConEd. The Syndicates conclude that inasmuch as the Liquidator filed the instant suit more than six years after the payment to ConEd, British law first bars the suit and is, therefore, applicable under the borrowing statute.[5]

---

**5.** In their reply brief, the Syndicates assert that the United States District Court for the Western District of Pennsylvania, in *Insurance Commissioner of Connecticut v. Novotny*, 2009 WL 1653553 (W.D.Pa.2009), an unreported decision applying Pennsylvania law, "decided the 'when' issue" and they argue that if the same analysis is applied to the present case, it "resolve[s] the cross-motions without even having to reach the 'where' issue." Syndicates' Reply Brief at 3. The Syndicates contend that *Novotny* "clarified that, under Pennsylvania law, the statute of limitations for a claim for indemnity begins to run when the right to seek indemnity commences—not after a request for indemnity is refused." Syndicates' Reply Brief at 3–4 (emphasis in original).

In *Novotny*, the court stated that in applying the borrowing statute "the substantive law of each state is used to determine when the claim accrued therein." *Id.* at *2 [citing *McKenna v. Ortho Pharm. Corp.*, 622 F.2d

657, 660 (3d Cir.1980) ("[T]he Pennsylvania borrowing statute requires us to look to the law of the state where the cause of action arose to determine not only the prescribed period of limitations but also the point at which the statute began to run.") ]. Based on this premise, the *Novotny* court compared the time an action for indemnification under a surety agreement accrues in Pennsylvania and in Connecticut. The court concluded that in Pennsylvania the accrual date differed slightly depending on whether the claim was based on indemnification for liability or for loss but that in any event the action was timely asserted within the four year statute of limitations in Pennsylvania. The court further concluded that in Connecticut the cause of action accrued when liability became fixed by settlement of the underlying action but that this date brought the indemnification action well within the three year statute of limitations applicable in Connecticut. Inasmuch as the action was timely in either jurisdiction,

In its argument, the Liquidator applies the borrowing statute to a choice between the statute of limitations in Pennsylvania, the forum state, or that applicable in New York, the state where according to the Liquidator the cause of action accrued, and concludes that Pennsylvania's four year limitation period applies, that being shorter than New York's six year limitation. The Liquidator contends that the cause of action accrued when the Syndicates breached the reinsurance contract by refusing to make payment and it accrued in New York, where the injury, *i.e.*, the economic harm from non-payment, was felt. In his reply brief, the Liquidator, disagreeing with the Syndicates' premise that the cause of action is one for indemnification, contends that given that reinsurance is simply a contractual agreement to insure a primary insurer and given that Section 534 of the Insurance Department Act of 1921, 40 P.S. § 221.34, operates to make reinsurance an asset of an insolvent cedant's estate, any attributes reinsurance may share with indemnification are much diminished if not lost entirely. Plaintiff's Reply Brief at 6–7. In addition, each party, pointing out that the statute of limitations is a procedural provision, disagrees with what it characterizes as the other party's analysis of the jurisdictional contacts and interests in support of their respective contentions as to where the cause of action arose.

■ In Pennsylvania, the law of the forum governs the time in which a cause of action must be commenced. *Unisys Fi-*

nance Corp. v. U.S. Vision, Inc., 428 Pa.Super. 107, 630 A.2d 55, 58 (1993); *Gwaltney v. Stone*, 387 Pa.Super. 492, 564 A.2d 498, 502 (1989). The borrowing statute, known as the Uniform Statute of Limitations on Foreign Claims Act, 42 Pa.C.S. § 5521, establishes the time in which an action accruing out-of-state will be time barred. Thus, the statute provides a very particular rule for resolving conflicting limitations periods. However, for resolution of substantive conflicts we must turn to the analysis prescribed under *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964).

■ Under *Griffith*, the choice of law determination looks to the law of the jurisdiction with the most significant relationship to the occurrence and the parties, placing importance on analysis of the policies underlying the conflicting laws and the relationship of the particular contacts to those policies.[6] *Id.* at 15, 203 A.2d at 802. Proper application of the analysis depends not on a mere counting of contacts with the respective jurisdictions; the contacts must be measured on a qualitative rather than a quantitative scale. *Caputo v. Allstate Ins. Co.*, 344 Pa.Super. 1, 495 A.2d 959, 961 (1985).

■ As aptly described by our Superior Court, "Substantive law is the portion of the law which creates the rights and duties of the parties to a judicial proceeding whereas procedural law is the set of rules which prescribe the steps by which the

the court did not decide where the action arose for purpose of the borrowing statute. Recognizing that, as a federal case, *Novotny* is not binding precedent and given that the court did not need to apply the borrowing statute to reach its decision and in view of the fact that the cause of action, albeit one for indemnification, did not involve a contract of reinsurance, the Syndicates' reliance on this case is misplaced.

6. Since *Griffith*, which is a case based in tort, our courts have also applied this analysis to contract actions, specifically rejecting the premise that the law of the state where an insurance contract is delivered will apply to construing the contract's terms. *See Budtel Assocs., LP v. Continental Cas. Co.*, 915 A.2d 640, 644 (Pa.Super.2006); *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 921 (Pa.Super.2002).

parties may have their respective rights and duties judicially enforced." *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 571 (Pa.Super.2005) [quoting *Ferraro v. McCarthy–Pascuzzo*, 777 A.2d 1128, 1137 (Pa.Super.2001) ]. Here the parties raise an issue of substantive law. At root, they disagree as to what the cause of action is— one for indemnity arising when the underlying indemnified obligation was paid or one for breach of contract arising when the claim for payment under the reinsurance contract was denied.[7] Hence, application of the *Griffith* analysis is called for here.

The conclusion that a *Griffith* analysis applies is not altered by anything expressed in the opinion of the Court of Appeals in *Mack Trucks, Inc. v. Bendix–Westinghouse*, 372 F.2d 18 (3d Cir.1966), wherein the court rejected application of a *Griffith* conflicts analysis to determine where a cause of action accrued. In *Mack Trucks*, the court noted correctly that under the borrowing statute Pennsylvania courts may apply the statute of limitations where the cause of action arose without regard to contacts the parties may have had with any other state before the claim became actionable, these factors having no relevance to when or where the cause arose. *Id.* at 21. Unlike the present case, there was no dispute in *Mack Trucks* as to what constituted the final significant event necessary to make the claim actionable and the court had no difficulty identifying when and where that event occurred. However, in its opinion, the court made a statement that bedevils the parties' arguments in the present case. The court said:

We think the concept of when a cause of action arises and the concept of where a cause arises, both used to aid in the application of statutes of limitation, are in pari materia. In other words, the cause arises where as well as when the final significant event that is essential to a suable claim occurs.

*Id.* at 20. Considering the where and the when in pari materia makes sense if there is no question as to what constitutes the final significant event necessary to give rise to a suable claim. In the present case, however, this is the very essence of the dispute. Nothing in *Mack Trucks* suggests that a substantive conflicts analysis would not be called for to resolve this dispute.

Likewise, nothing in the decision of the Third Circuit in *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir. 1980) changes the conclusion that a substantive conflicts analysis under *Griffith* is called for in the present case. In *McKenna* there was no dispute that a cause of action for negligence and products liability arose in Ohio where the plaintiff took an oral contraceptive that allegedly caused injury. The court looked to Ohio law rather than Pennsylvania, the forum state, to determine that the discovery rule applied to toll the statute of limitations. Unlike the present case, there was no conflict between the jurisdictions regarding the nature of the cause of action. Hence, *McKenna* does not dictate that a question as to the elements of the cause of action be resolved by focusing on where the elements would be first established.

7. The premise that a cause of action for indemnification accrues upon payment of the indemnified obligation is valid not only in England but also in Pennsylvania and New York. The conflict arises in the present case because, as indicated in the English cases attached to the Syndicates' motion, English law apparently does not distinguish between an action for indemnification and one for breach of a reinsurance contract (and notably the Liquidator agrees that in England the cause of action would accrue on the earlier date), while both Pennsylvania and New York make the distinction and would consider the action accrued upon breach.

In *Griffith,* our Supreme Court adopted the approach of the Restatement of Conflict of Laws, Second to resolving choice of law questions. *Id.* at 15, 203 A.2d at 802; *Gillan v. Gillan,* 236 Pa.Super. 147, 345 A.2d 742, 744 (1975). Applying this approach in a case for breach of contract, our Superior Court in *Gillan,* set forth the relevant sections of the Restatement beginning with Section 6, as follows:

Choice–of–Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

More particularly with respect to contracts, Section 188(1) provides:

The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles in Section 6.

*Id.* at 744.

Section 188(2) sets forth the contacts that are generally considered significant to resolving a choice of law concerning a contract, as follows:

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

*Id.* at 744 n. 1.

 Looking in turn at each contact listed above, the precise moment of contract formation is not susceptible to easy determination. This is because of the almost casual process of entering into a reinsurance agreement. *See Koken v. Legion Ins. Co.,* 831 A.2d 1196, 1210 n. 25 (Pa. Cmwlth.2003) (single judge op.), *aff'd,* 583 Pa. 400, 878 A.2d 51 (2005). Reliance, as the ceding company, had its New York broker, Marsh, prepare the slip containing the details of the risk to be placed; the slip was then circulated out of Marsh's London office to the managing agents for prospective reinsurers, in this case, various Syndicates, which if willing to accept some portion of risk, then "scratched" the slip by initialing and indicating the percentage of risk accepted. In general, reinsurers are bound once they have scratched the slip. *Sumitomo Marine & Fire Ins., Co., Ltd. v. Cologne Reins. Co.,* 75 N.Y.2d 295, 302, 552 N.E.2d 139, 142, 552 N.Y.S.2d 891, 894 (1990). A cover note, such as that contained in the present record, reflects the terms accepted by scratching the slip. However, in the present case, additional negotiations occurred after the initial slip was scratched. These negotiations ulti-

mately yielded a slight alteration that is apparent from a notation on the cover note dated June 1998, indicating that it replaces an earlier cover note dated April 1998.[8] In the present case, the final cover note, rather than the scratched slip, evidences the parties' final agreement and, thus, receipt thereof and acceptance by Reliance in New York conforms to the traditional moment of contract formation. The parties negotiated the agreement via international communications between their respective agents, Marsh for Reliance and the managing agent representing the Syndicates. Thus, neither New York nor England can be specified as the predominant location of negotiations. The cover note does not specify a place of performance but as a Pennsylvania company licensed in New York, Reliance would reasonably expect to receive payment in the United States. The reinsurance covered risk Reliance insured on property located worldwide and the particular claim at the root of the instant litigation is based on damage to property in New York. The Syndicates classified it as "US Reinsurance," placing it within the scope of the Lloyd's Trust Fund supervised by the New York Department of Insurance. While Lloyd's of London is an insurance marketplace based in England, members of any particular Syndicate are not necessarily domiciled in or residents of England. The managing agencies for the Syndicates[9] conducted business in England with Marsh's London office and on behalf of the Syndicates re-ceived, reviewed and signed the slips.[10] The Syndicates' managing agents in England are the eventual recipients of claims forwarded to them from Marsh's New York office and the decision to pay or deny a claim originates in England. Important contacts exist with England and New York; the quality and number of contacts in one locale does not readily outweigh those in the other locale. However, upon consideration of the interests and policies listed in Section 6 of the Restatement, the New York contacts take on greater weight.

As the forum jurisdiction, Pennsylvania's general interest is primarily the concern of the Insurance Commissioner, as Liquidator, in maximizing the estate for the benefit of policyholders. Thus, Pennsylvania has a strong interest in the avoidance of a forfeiture of paid for coverage.[11] New York's interest in recovery of reinsurance proceeds in order to achieve a maximum value in the Reliance estate for the benefit of New York policyholders and guaranty associations parallels Pennsylvania's. As between reinsurers located outside of the United States and a United States cedant, the logical expectation would be that the law of the cedant's locale applies. Were it otherwise and the ceding company reinsured different percentages of risk with reinsurers domiciled in different locations, the applicable law could differ with regard to different portions of the risk. This could considerably complicate the determination of the law to be applied

8. In general, the cover note states the terms agreed to when the slip is scratched. *See Legion.*

9. Hiscox operated as the managing agency for Syndicate 33 and Shelbourne Syndicate Services operated as the managing agent for Syndicate 205.

10. Syndicates maintain that formation of an agreement occurred when the slips were signed or "scratched" in England.

11. *British Ins. Co. of Cayman v. Safety Nat'l Cas.,* 335 F.3d 205, 212–13 (3d Cir.2003) (noting that while reinsurance is not a contract of adhesion, nevertheless policy against forfeiture applies). *See also Unigard Sec. Ins. Co. v. North River Ins. Co.,* 79 N.Y.2d 576, 584 N.Y.S.2d 290, 594 N.E.2d 571, 573 (1992).

in an action based on a reinsurance agreement. Certainty, predictability and uniformity in the result of reinsurance contract actions is best served by turning to the law of the cedant's locale. Therefore, for the purpose of determining the elements of the present cause of action so as to identify the final event necessary to trigger the statute of limitation, we turn to the law of New York.

 The salient principles of New York law are succinctly set forth in *Continental Casualty Company v. Stronghold Insurance Company, Ltd.,* 77 F.3d 16 (2d Cir.1996), as follows. A reinsurance policy is an express contract to indemnify the cedant against loss due to payment on an underlying insurance claim covered by the reinsurance. *Id.* at 19. In general, a claim for indemnification accrues when the indemnitee actually suffers the loss by paying the underlying obligation. *Id.* "An express contract for indemnity, however, remains a contract. Hence the parties are free, within the limits of public policy, to agree upon conditions precedent to suit." *Id.* "Common conditions include filing proofs of claim and allowing the insurance company time to investigate and pay the claim." *Id.* Thus the rule has evolved in insurance cases that the cause of action accrues "when the loss insured against becomes due and payable" under the policy. *Id.* In *Continental Casualty,* where the policy established that loss covered under the policy must be reported to the reinsurer "as soon as practicable," the court concluded that the insurer's cause of action for payment did not arise until notice of loss was provided to the reinsurer and the reinsurer was afforded a reasonable time in which to decide whether and how much it would pay.

The court in *Continental Casualty* further ruled that New York's Civil Practice Law and Rule 206(a) did not alter its conclusion as to when the cause of action accrued. Rule 206(a) states that "where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete." N.Y. Civ. Prac. L. & R. 206(a). The court concluded that this rule does not apply when the demand is an essential element of the cause of action. The court explained:

> New York courts do not instinctively apply CPLR 206(a) in every case where a demand is a predicate to suit. Rather, they distinguish between substantive demands and procedural demands. This distinction derives from earlier statutes, which CPLR 206(a) merely rephrased, and which expressly applied only "where a right exists, but demand is necessary to entitle a person to maintain an action."
>
> Thus, where a demand is an essential element of the plaintiff's cause of action, as in bailment cases, *see e.g., Ganley v. Troy City Nat'l Bank,* 98 N.Y. 487, 493–96 (1885), and replevin cases involving good faith purchasers of stolen art, *see e.g., Solomon R. Guggenheim Found. v. Lubell,* 77 N.Y.2d 311, 319 [567 N.Y.S.2d 623] 569 N.E.2d 426, 430 (1991), CPLR 206(a) does not apply. Similarly, here a "demand," in the form of notice to the reinsurers of actual loss on the underlying insurance policies, is an essential element of Continental's indemnity claims. As we have made clear, Continental had no right to indemnity under the policies until it satisfied this provision. And, the reinsurers were not in "breach" of their contract to indemnify until they rejected the demand (or until a reasonable time for paying the losses elapsed). Accordingly, CPLR 206(a) does not apply.

*Id.* at 21.

 In the present case, there is no dispute that the Syndicates were not

obliged to pay until they received notice and a demand. Therefore, applying the principles stated in *Continental Casualty,* the cause of action asserted by the Liquidator for breach of contract did not accrue until the demand for payment under the policy was made and denied. Hence, it accrued in 2008. Applying Pennsylvania's borrowing statute, the statutory limitation period that would first bar the claim would be the four-year limitation period applicable to contract actions in Pennsylvania. *See* 42 Pa.C.S. § 5525(a)(8). However, as the action was filed just months after it accrued, identifying which particular statutory limitations period applies is of no moment. The action is timely in either Pennsylvania or New York. For this reason, the Syndicates' motion for summary judgment is denied.

### Notice to Reinsurer

■ The Syndicates contend that under the reinsurance contract Reliance was obligated to provide notice of its claim as soon as practicable and that Reliance failed to do so. The Syndicates assert that the reinsurance contract incorporated terms from the Reliance–ConEd policy such as the requirement that notice of the claim be provided "as soon as practicable." Syndicates point to the provision in the reinsurance cover note stating "Policy Form: As original, deemed seen and agreed" as providing for incorporation of the ConEd policy terms. The Liquidator disagrees with the Syndicates' contention that the cover note incorporated into the reinsurance contract the provision in the ConEd policy prescribing the time for notice. The Liquidator contends that the reinsurance contract did not establish an explicit time for notice. Whether the parties agreed to a requisite time for providing notice of a claim and what that requirement may be is not susceptible to

determination by a plain reading of the reinsurance cover note. Hence, a material dispute of fact exists as to when Reliance was obligated to provide notice of its claim.

■ In addition, the "notice-prejudice" rule applies in both Pennsylvania and New York. *See Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977). *See also Unigard Sec. Ins. Co. v. North River Ins. Co.,* 79 N.Y.2d 576, 594 N.E.2d 571, 584 N.Y.S.2d 290 (1992). Under this rule, unless the insurer establishes prejudice resulting from the insured's failure to give notice as required under the policy, the insurer cannot avoid its contractual obligation. *Brakeman,* 472 Pa. at 76, 371 A.2d at 198. *Unigard,* 79 N.Y.2d at 580–81, 594 N.E.2d at 573, 584 N.Y.S.2d at 292. The question of prejudice is one of fact that cannot be determined on the record as it now exists. For these reasons, judgment on the merits of the claim must await creation of an evidentiary record and the Liquidator's motion for summary judgment is denied.

Accordingly, the motion and the cross-motion for summary judgment are denied.

### ORDER

AND NOW, this 4th day of June, 2010, upon consideration of the cross-motions for summary judgment and the responses thereto in the above-captioned matter, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** and Plaintiff's Cross–Motion for Summary Judgment is **DENIED.**