SESSIONS *v.* OLIVER *et al.*

No. 16358. OCTOBER 13, 1948.

*Logan & Scott*, for plaintiff.

*George L. Goode, McClure & Ramsay*, and *George G. Allen*, for defendants.

WYATT, Justice. ■ Originally the plaintiff in error, mother of the two children involved, filed her petition to set aside or modify a divorce decree, praying only that the decree be set aside or modified so as to give her custody of one of the children. By amendment she changed the prayer of the petition into one for modification of the decree upon the ground of changed conditions, after setting out in her amendment the nature of the changed conditions.

The order passed by the trial court is susceptible of different interpretations. The trial court in the first sentence of the order denied the prayer of the petition, which had the effect unquestionably of adjudicating that there were no such changed conditions as would warrant a modification of the decree. Then the court stated that the denial of the prayer of the petition was not intended as an adjudication of the "present proper custody." Nevertheless, the effect of the judgment was to leave the custody in statu quo, thus denying custody to the mother, and leaving the father with one child and the petitioners for adoption with the custody of the other child.

Our interpretation of the order is in agreement with that placed upon it by counsel for the defendants in error, who state in their brief: "The refusal to modify the decree had the legal effect of continuing the custody as previously fixed and holding that there were no material changes in condition which substantially affected the interest and welfare of the children or either of them." Counsel then cite the case of *Fortson* v. *Fortson*, 195 *Ga.* 750 (1), 758 (25 S. E. 2d. 518), where this court held: "The order was in part as follows: 'The evidence, in the opinion of the court,

is not sufficient to justify the setting aside or modification of the decree of May 8, 1941; and the defendant's prayer that permanent custody of the children be awarded to him is, at this time, denied.' We construe this language as a finding from the evidence that no material change in the circumstances appeared, and hence that the original decree should be allowed to stand. If an order is equivocal and susceptible of more than one interpretation, it will be construed consistently with the theory that the judge performed his duty by considering the evidence and making a finding from it, where the issue is one for such determination."

In this case we construe the order as a denial of custody to the mother of the children upon the ground that there was no material change in conditions, and hence that the original decree should be allowed to stand.

█ This is a controversy involving the right of custody of a child, as between parents and third parties. Although the petition, as finally amended, prayed for custody of both children, the main issue as to custody relates to the youngest child, and that issue is here considered. The defendant in error Oliver contends principally that the trial court did not err in denying custody to the mother of the child, because (1) she had abandoned the child in its infancy and left it without means of support, and (2) the child was awarded to him under a divorce decree, which is res adjudicata as to the right of custody.

Certain facts in this case are undisputed. All parties involved are persons of good character, amply able and willing to support the child. They maintain homes of good environment, where the children can be properly reared and educated.

In determining whether the trial court abused its discretion in denying custody of the youngest child to the mother, it is necessary that we determine the relative rights of the parties.

Although, as between parents in a contest over custody of minor children in a divorce case, no prima facie right of custody exists, the divorce decree in this case, which awarded custody of the children to the father, based upon an agreement between the parties, vested in the father the prima facie right of custody. This judgment, however, is not conclusive, except as to the status existing at the time of its rendition, and is subject to a change

432

or modification on a showing of a change in circumstances or conditions since its rendition. *Milner* v. *Gatlin*, 143 *Ga.* 816 (4) (85 S. E. 1045, L. R. A. 1916B, 977) ; *Fortson* v. *Fortson*, supra.

Where a divorce decree, awarding custody to a father, vests the prima facie right of custody in the father, that prima facie right of custody may be forfeited by the actions of the father subsequent to the rendition of the decree. By the Code, § 74-108, it is provided that parental control of a minor child shall be lost by either of six means, among them: (1) voluntary contract, releasing the right to a third person; (2) consenting to the adoption of the child by a third person; and (3) failure of the father to provide necessaries for his child, or his abandonment of his family.

It was established by undisputed evidence in this case that the father voluntarily, after the rendition of the divorce decree, consented in writing to the adoption of his youngest child; and, for approximately a year prior to the institution of the present proceedings, the child had been living in the home of the persons proposing to adopt it; and, at the time of the institution of the action by the mother of the child, these third parties were caring for and supporting the child. With regard to his reason for consenting to the adoption, the father testified: "As to my consenting for the Pooles to have this child and have its name changed and completely take it away, I feel they are more able than I; they have got the money and the finances and everything it takes to send a child through school." Notwithstanding this testimony, the father offered a number of witnesses to testify as to his financial ability to support the child.

We have no hesitancy in ruling, under the plain mandate of the law and the undisputed evidence, that the father by his conduct, his voluntary consent to the adoption of the child and his subsequent failure to provide for the necessaries of his child, forfeited his right of custody. With the forfeiture of this right, where stands the mother of the child with regard to its custody?

This question was recently answered by this court in the case of *Hill* v. *Rivers*, 200 *Ga.* 354, 357 (37 S. E. 2d, 386). There the court was dealing with a contest between parents and a third party, which arose after a divorce decree had granted custody to the mother. It was held that the mother by her unfitness of

character had lost the prima facie right of control which she had by virtue of the divorce decree. The court said: "This court is committed to the proposition that where the mother of a child, to whom custody has been awarded by a divorce decree, dies, the prima facie right of custody automatically inures to the father. *Chapin* v. *Cummings*, 191 *Ga.* 408 (12 S. E. 2d, 312); *Girtman* v. *Girtman*, 191 *Ga.* 173 (11 S. E. 2d, 782). If the prima facie right of custody of the child reverts to the father upon the death of the mother, why should it not do so if the right of custody be lost by the mother by reason of her unfitness of character? Logic and reason compel the conclusion that, when the custody is forfeited in the mother, the custody automatically inures to the father, unless it be lost in one of the modes provided by law. The natural rights of the father are not annulled by a provision in a divorce decree awarding custody of a child to the mother; they are only suspended for the time being, and are revived in full force upon the mother's death, and, we think, upon her forfeiture of her right of custody. With the prima facie right of custody having been forfeited by the mother in this case, such right automatically inured to the father."

It is, therefore, clear that with the forfeiture of custody by the father in the instant case, the prima facie right of custody automatically and immediately vested in the mother. In the *Hill* case it was further held, after exhaustive quotations from many authorities, that the right of custody thus vesting in a parent by virtue of a forfeiture was superior to the right of custody of a third party, where the evidence showed both parties to be of fit character and of ample means to rear the child; and that it was an abuse of discretion for a trial court to override this prima facie right of custody by awarding custody to a third party.

It is urged in this case, however, that the consent to adopt is immaterial, because the father, just prior to the rendition of the judgment complained of, revoked the consent when the adoption proceedings were voluntarily dismissed.

Where the parental authority over an infant child is released to another, such release is not revocable unless some sufficient legal reason is shown therefor. *Durden* v. *Johnson*, 194 *Ga.* 689 (22 S. E. 2d, 514), and cit. A mere change of mind on the part of the parent consenting is not such legal cause as will revoke

the consent. "If the child were badly treated it might be annulled; if any other good legal reason arose, it could be set aside as any other contract which was violated; but for no cause at all, it cannot be." *Bently* v. *Terry,* 59 *Ga.* 555, 557 (27 Am. R. 399). In the instant case, the father, in seeking to revoke the consent previously given, gave no reason at all, legal or otherwise, in support of his action. On the contrary, the only conclusion to be drawn from the circumstances is that the action taken was for the purpose of defeating any right of custody the mother might have acquired.

Moreover, whether his action was upon legal grounds or not, an attempt at revocation could not have the effect of divesting the prima facie right of custody automatically acquired by the mother upon the voluntary relinquishment of such right by the father. A vested right immediately inured to her benefit; and although she might, by subsequent acts, divest herself of that right, the father could not do so—no more than he could had he lost the parental control by his unfitness of character and had sought to retrieve it by announcing to the court his repentance and intention to amend his ways.

Finally, it is urged by the defendants in error that the mother of the child had lost her parental control by abandonment of the child.

It might be pointed out that, under the agreement entered into between the parties, the father agreed to take custody of the child and to support the child. Notwithstanding this agreement, the mother actually supported and maintained the child while she retained custody of it for six or seven months after its birth. The father made no effort to obtain custody until the mother left the child with her sister while she went to look for work. The father then, through the Red Cross, secured custody of the child. The most favorable evidence for the defendants in error tended to show that at the time the father obtained custody of the child, taking it from the home of the maternal grandparents, the child was in ill health, dirty, and in need of clothing and medical care. This evidence alone is insufficient to show any abandonment of the child by the mother. After the father secured the child, the mother made trips to see it and took it clothing. There is not the slightest evidence which might lead to the conclusion that the

mother intended to abandon her child when she left it with her sister. The father, testifying as to the circumstances of his obtaining custody of the child, stated: "I didn't go to the Crunkleton home to get the baby; I drove up and sat in the car; Mrs. Martin went in the house and got it. I drove the Red Cross car there. I went there for the purpose of taking the baby away from the grandfather and put it in the home of someone who was not related to me. I knew they were going to take it. They were not related to me. I was not trying to take the child away from the mother. . . If she had wanted, she could have kept it. As to agreeing for her to keep it, I never did say anything contrary about it. I asked for it in the divorce proceedings, but I didn't get it until she abandoned it. I wouldn't think the child was abandoned when it was at the home of Mr. Crunkleton in Cornelia. From the time the child was born until she left Brunswick, I didn't know where the child was. I sent a hundred dollars to the hospital to pay the bill. I don't know what she did with the money. I don't know what the hospital bill was. She didn't notify me when she left the hospital. The first I knew where this child was, was when the Red Cross wrote me in Virginia. I sent the money to her at the hospital. She left of her own accord and I had nothing to do with it. I didn't hunt her up. . . I didn't find her at Crunkleton's. If the mother left her child with her father, I wouldn't call that abandoning it."

Even if the court might consider the question of abandonment of the child by the mother, which alleged act occurred prior to the rendition of the divorce decree and long prior to the consent to adoption, and while the father was under a legal and contractual obligation to support the child, there was no evidence from which it might be inferred that such abandonment actually occurred.

Under the undisputed facts, the trial court abused its discretion in denying custody of the youngest child to the mother.

■ It is unnecessary to rule upon the exception to the judgment allowing the case to be reopened for the introduction of further evidence, since the record reveals that no new evidence was actually introduced; and such ruling, if error, was harmless.

■ While the evidence was sufficient to authorize a finding that the original agreement as to custody of the children was

binding upon the parties, and should not be modified or set aside because of alleged circumstances surrounding its execution, nevertheless the evidence demanded a finding for the mother as to the custody of the youngest child on the ground of a change in conditions subsequently to the date of the agreement and the divorce decree. There being no showing of a change in conditions as to the oldest child, the evidence demanded a finding in favor of the father as to the custody of that child. Accordingly, the judgment must be reversed insofar as it failed to award custody of the youngest child to the mother; and the judgment must be affirmed insofar as it had the effect of retaining custody of the oldest child in the father.

*Judgment affirmed in part, and reversed in part. All the Justices concur, except Bell, J., absent on account of illness.*