A94A0294. FAULKENBERRY v. ELKINS et al.
(445 SE2d 283)

COOPER, Judge.

This appeal follows our grant of the application of petitioner Lisa M. Faulkenberry seeking discretionary review of the trial court's order denying petitioner's petition to set aside and/or vacate an order granting permanent custody of her minor child to Wayne M. Elkins and Carol R. Elkins (the "Elkins"), petitioner's aunt and uncle.

Petitioner married her husband Robert Faulkenberry on July 28, 1990, and gave birth to a daughter (A. S. F.) on November 2, 1991. Shortly after the child's birth, petitioner was hospitalized for gall-

bladder surgery. During her recuperation from the surgery, petitioner began having "passing out spells" and was once again admitted to the hospital for observation. While she was hospitalized, petitioner fell in the hallway and hit her head, purportedly suffering a total memory loss to the extent she did not remember she was married or that she had a child.[1]

Because of petitioner's claim of total memory loss, petitioner began a series of in-patient visits to various psychiatric medical facilities in Georgia and Tennessee where a battery of medical, psychological, neurological and intelligence tests were performed. None of petitioner's medical records support petitioner's claim of trauma induced amnesia, although it is clear that petitioner has been diagnosed as having various and serious mental problems, including psychogenic amnesia, schizotypal personality disorder of a severe nature, and depression. Eventually, petitioner was released from the hospitals and treated on an out-patient basis with an array of medications, including Thorazine, Prozac, Triavil and Klonopin.

For the first few months following A. S. F.'s birth, the child was taken care of by various relatives while petitioner was receiving treatment for her physical and mental illnesses. In January 1992, the Elkins were given physical custody of A. S. F. by the Faulkenberrys and have had custody of her ever since. Neither petitioner nor her husband have ever undertaken any responsibility for raising A. S. F., nor have they ever exercised any parental authority over the child. Due to the Faulkenberrys' inability to cope with their child, discussions were held within the family in November 1992 to consider placing the child in the legal custody of the Elkins. Evidence has been presented that both petitioner and her husband participated in these discussions and expressed a desire for the Elkins to have custody of their child. On November 18, 1992, petitioner and her husband went to the law offices of the Elkins' attorney and signed forms acknowledging their receipt of a copy of the Elkins' complaint for permanent custody of A. S. F. and setting forth their consent to a grant of permanent custody to the Elkins. A final hearing was held on the petition on January 7, 1993, during which permanent custody and control of A. S. F. was awarded to the Elkins. Neither petitioner nor her husband attended the hearing, by their own choice.

On February 8, 1993, petitioner and her husband filed a joint motion to set aside and/or vacate the order granting custody of A. S. F. to the Elkins. In her motion, petitioner alleged that she was not of clear mind and intellect at the time she executed the consent and

---

[1] The Elkins dispute petitioner's claim of amnesia and presented evidence at the hearing supporting their position that petitioner did not suffer a memory loss.

acknowledgment and that she had been unaware of the legal significance of the document and of the effect such document would have on custody of the minor child. Robert Faulkenberry decided not to pursue his motion after the Faulkenberrys initiated divorce proceedings. After a hearing was held on petitioner's motion, the trial court denied petitioner's motion to set aside, ruling that petitioner had executed the consent and acknowledgment at a time when she was fully competent and understood the contents of the document and the consequences of her signature.

1. Petitioner alleges the trial court erred in failing to set aside the order granting custody of A. S. F. to the Elkins because the Elkins neither pleaded nor proved that the Faulkenberrys were unfit parents or lost their parental power as required by OCGA § 19-7-1. Parental power may be lost by any of the ways recognized by law, including voluntary contract, releasing the right to a third party pursuant to OCGA § 19-7-1 (b) (1). *In the Interest of A. M. Y.*, 189 Ga. App. 847 (1) (377 SE2d 893) (1989). OCGA § 19-7-1 (b) (1) permits a parent to relinquish her parental rights to a third party by contract and imposes no requirement that the parent be shown to be unfit prior to her surrender of these rights as may be required by other subparagraphs of this Code section. Accordingly, this enumeration of error is without merit.

2. Petitioner alleges that the trial court erred in finding that petitioner assented to the terms of the consent and acknowledgment and that petitioner had sufficient mental capacity to execute the consent and acknowledgment.

"Although OCGA § 19-7-1 (b) provides that parental power may be lost by voluntary contract, the evidence must establish clear, definite, and unambiguous terms of such contract before a relinquishment of parental rights will be found." (Citations and punctuation omitted.) *In the Interest of A. M. Y.*, supra at 849. In the present case, there is no question that petitioner executed a document on November 18, 1992, that clearly, definitely and unambiguously relinquished her parental power to the Elkins. What is at issue here is whether petitioner had sufficient mental capacity at that time to enter into such an agreement.

Where a natural parent claims mental incapacity in a case involving the surrender of parental rights, this court will "base our analysis upon the law regarding mental incapacity to execute a contract generally." *Families First v. Gooden*, 211 Ga. App. 272, 277 (5) (439 SE2d 34) (1993). Thus, a contract surrendering parental rights "is subject to cancellation if the person executing the contract was entirely without understanding of the contract or if the person lacked a full and clear understanding of the nature and consequences of the contract. [Cit.]" Id. at 277. "[W]here it is contended that one who executed a

contract was not competent to execute it, the burden is upon [her] who asserts the incompetency. Mental or physical impairment is never presumed. It must be proved. In order to void a contract on the ground of mental incapacity of the maker, [s]he must have been *non compos mentis*, that is, entirely without understanding, at the time the contract was executed. It is also the policy of Georgia law, wherever possible, to uphold contracts and to uphold the capacity of one to enter into a contract. Further, even proof of a temporary loss of sanity or competency would create no presumption that it continued up to the time of execution of the contract, and the burden remains on the party alleging incapacity to show such incapacity at the very time of the transaction." (Citations and punctuation omitted.) *Nelson v. State Farm Life Ins. Co.*, 178 Ga. App. 670, 672 (1) (344 SE2d 492) (1986). Therefore, petitioner had the burden of proving that she was without mental capacity to contract on November 18, 1992, at the time she relinquished her parental rights to the Elkins.

In support of her claim of insufficient mental capacity to contract, petitioner testified that because she was so nervous about what she was going to do, she took a quadruple dose of her Thorazine medication approximately two hours before she went to the law offices to sign the documents. She stated that this large dose of medication, together with the other prescription drugs she had taken that day, made it difficult for her to focus her eyes and read the document she was signing. Although petitioner later admitted she was aware she was signing a document that gave the Elkins certain rights over A. S. F., she claims she did not realize the document gave the Elkins permanent custody of the child. An expert witness who is both a pharmacist and attorney testified on petitioner's behalf. He stated that it was his belief that the large dose of Thorazine taken by petitioner combined with the other medication she had taken that day may have impaired her ability to exercise rational judgment and prevented her from understanding the full consequences of what she was signing. On cross-examination, however, the expert witness admitted that if petitioner had been so impaired by the medication, she would have exhibited some physical or behavioral abnormalities that would have indicated that something was wrong. This was not the case as there was testimony that petitioner's appearance, behavior and demeanor were all normal when she appeared and signed the papers, that petitioner read the papers before signing the documents, that petitioner failed to ask any questions in response to a query from the Elkins' attorney, and that petitioner or her husband specifically asked the attorney whether they had to appear for the custody hearing.

Other testimony adduced at the hearing directly contradicted petitioner's assertions that she was highly medicated or mentally incompetent at the time she executed the documents. Petitioner herself tes-

tified that she knew what she was signing but only did so because she was afraid of her husband. Petitioner's mother, Mrs. Elkins and petitioner's husband all testified that petitioner was involved in many of the conversations held in the fall leading up to the family's decision to give custody of A. S. F. to the Elkins. Mrs. Elkins also testified that petitioner called her encouraging Mrs. Elkins to go ahead with the custody proceeding. Petitioner's mother further testified that petitioner visited her home the day after she signed the documents and told her mother that she was relieved she had given custody of A. S. F. to her aunt.

On cross-examination, petitioner also admitted that in the month of November, at the same time she claims she was mentally incompetent from her medication and/or illness, she had sufficient mental capacity to work part-time, to initiate legal proceedings in the juvenile courts of Tennessee to get custody of her teenage sister from her father, and to file for and receive AFDC benefits for A. S. F., which involved falsely swearing that petitioner was in physical custody of her minor child. Finally, the Elkins introduced testimony that suggested that petitioner decided to try to regain custody of A. S. F. in January only after she stopped receiving governmental assistance checks for her daughter and realized that she was no longer allowed to claim her daughter as a dependent for income tax purposes.

Based upon our review of the record, we find that the trial court correctly concluded that petitioner failed to meet her burden of proving she was mentally incompetent or did not know what she was doing at the time she executed the documents relinquishing her parental rights to the Elkins. Instead, the evidence leads us to believe that petitioner knowingly and voluntarily relinquished custody of her child but later changed her mind, perhaps when she became aware of some of the financial repercussions of her decision. "Where the parental authority over an infant child is released to another, such release is not revocable unless some sufficient legal reason is shown therefore. A mere change of mind on the part of the parent consenting is not such legal cause as will revoke the consent." (Citation omitted.) *Sessions v. Oliver*, 204 Ga. 425, 433-434 (2) (50 SE2d 54) (1948). Accordingly, the trial court did not err in denying petitioner's motion to set aside the order granting custody of A. S. F. to the Elkins.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 24, 1994 —
RECONSIDERATION DENIED JUNE 8, 1994 — 

*Joseph E. Willard, Jr.*, for appellant.

*Herbert E. Franklin, Jr.*, for appellees.