## In re Adoption of Baby Boy Y.

*Christopher T. Spadoni,* for petitioner.
*Robert T. Yurchak,* for respondent.

LAVELLE, *P.J.,* October 31, 1995—We are called upon in this unusual proceeding to decide the difficult and complex question of whether a Georgia mother who gave up her child for adoption in Georgia and executed legal documents which would have terminated her parental rights in Georgia should now be permitted to object to the adoption of her child here in Pennsylvania. In order to do that we must determine the nature of the various legal documents before us and decide whether we should apply Georgia or Pennsylvania law in interpreting these documents and passing upon their legal validity.

Not only is this a case of first impression, but the issues raised do not lend themselves to swift and easy resolution. The briefs submitted by counsel demonstrate the difficulty and complexity of the issues involved in this case. Each counsel presented a different legal theory of the case, one treating it as a consent to adoption issue with a full faith and credit clause analysis and the other as a voluntary termination of parental rights by operation of law. In our view, both of these theories

and their analyses miss the mark. From the time we have taken this matter under advisement, we have continuously and assiduously studied and restudied the testimony of the various witnesses, reviewed the legal documents which the natural mother wishes to disavow, and researched the applicable laws and relevant case law. After exhaustive research in this Commonwealth and the State of Georgia as well as cases from other states, we have found no cases on point.

## PROCEDURAL BACKGROUND

On March 22, 1994, Joseph and Kathy H. of Lehighton, Carbon County, Pennsylvania, filed a petition for adoption of Baby Boy Y. in this court together with a report of intent to adopt. (N.T. 85.) An adoption hearing was scheduled for May 18, 1994 at 9:30 a.m. On May 17, 1994 Jennifer Ann Y., a resident of the state of Georgia, the natural mother, filed a "revocation of consent" and appeared with counsel at the May 18, 1994 hearing to object to the adoption. Confronted with this turn of events, we continued the adoption hearing and directed the filing of formal pleadings to crystallize the legal issues.

On May 27, 1994, Jennifer filed a "petition to revoke and/or strike the consent to the adoption" alleging that her "consent" was executed under undue influence and that legal counsel did not explain her rights and the legal ramifications of signing the documents. Hs. then filed an answer with new matter in response to Jennifer's petition. An evidentiary hearing on the "petition to revoke" was held on August 25, 1994 from which we make, in narrative form, the following:

## FINDINGS OF FACTS

Jennifer Y. grew up and lived with her mother, Dolores G., and her stepfather in Dublin, Georgia and other

locations in Georgia for almost her entire lifetime. In November of 1993, a sonogram test confirmed for Jennifer, and her mother learned for the first time, that Jennifer was pregnant. Jennifer and her mother began to talk about giving up the baby for adoption.

Sometime in November of 1993, Jennifer's mother, Dolores G., and Jennifer's aunt, at Jennifer's urging, contacted Hs., who are residents of Lehighton, Carbon County, Pennsylvania, about the possibility of adopting the child Jennifer was carrying. (N.T. 83.) Kathy H. spoke with Jennifer on the telephone on February 1, 1994 and again on February 12, 1994. (N.T. 78.) Mrs. H. repeatedly asked Jennifer if she was sure she wanted to put the baby up for adoption and Jennifer responded that she was sure. (N.T. 77.) Jennifer also agreed to allow Hs. to obtain an attorney of their choosing to handle the adoption. (N.T. 77.)

Early in February of 1994, Hs. retained the services of Vincent M. Davison Jr., a Georgia attorney with considerable experience in handling Georgia adoptions, to advise Jennifer on what was required under Georgia law to terminate her parental rights and have her child adopted. On February 16, 1994, Jennifer and her mother met with Attorney Davison in his office to discuss the signing of the documents which would terminate her parental rights. Davison repeatedly asked Jennifer if she was certain about her decision to put her baby up for adoption. Davison also explained, one by one, the termination of rights documents to Jennifer, their legal ramifications, and what would take place after the baby was born. Davison specifically pointed out to Jennifer that she only had 10 days after signing the documents to change her mind, and Jennifer indicated to him that she understood the documents and their legal ramifications.

On February 18, 1994, Jennifer, who was single and 18 years of age at the time, gave birth to Baby Boy Y. in Augusta, Georgia. Baby Boy Y.'s natural father, John B., was also a resident of the State of Georgia. On February 19, 1994, the day after Baby Boy Y. was born, Jennifer, in the presence of her mother and Attorney Davison, executed the documents Attorney Davison had discussed with her earlier: the mother's affidavit, an acknowledgment of surrender of rights, and a surrender of rights—final release for adoption. (Attached as addenda to this opinion.) Attorney Davison had prepared these documents and supervised their execution, explaining each document to her and requesting she read each one before she signed them. After Jennifer signed the documents, Attorney Davison re-emphasized to Jennifer again that she had 10 days and only 10 days to change her mind. Jennifer never contacted Mr. Davison during that 10 day period.

On February 19, 1994, Hs. took physical custody of Baby Boy Y. at the hospital in Georgia and brought him to their home in Lehighton, Pennsylvania where he has resided continuously with them since that time.

## DISCUSSION

We shall begin by first examining the surrender of rights—final release document which Jennifer signed in Georgia.[1] It contains, inter alia, the following provisions:

"I, the undersigned, being solicitous that my male child, born Baby Boy Y. on February 18, 1994, should

---

1. The format of this document, the mother's affidavit, and acknowledgment of surrender of rights are provided by and authorized under the Ga. Code Ann., §19-8-26 to be used to terminate parental rights.

receive the benefits and advantages of a good home, to the end that he may be fitted for the requirements of life, consent to this surrender.

"I, the undersigned, mother of the aforesaid child, do hereby surrender the child to Vincent M. Davison Jr., Attorney at Law, as representative of the adoptive parents, PROVIDED such persons file a petition for adoption of the child in accordance with chapter 8 of title 19 of the Official Code of Georgia Annotated or in accordance with the laws of their home state, within 60 days from the date hereof. Furthermore, I promise not to interfere in the management of the child in any respect whatever; and, in consideration of the benefits guaranteed by the adoptive parents in thus providing for the child, I do relinquish all right, title and claim to the child herein named, it being my wish, intent and purpose to relinquish absolutely all parental control over the child."

A careful scrutiny of the document's contents reveals that it contains a conditional offer by Jennifer to surrender Baby Boy Y. to Attorney Vincent M. Davison as representative of parents seeking to adopt Baby Boy Y. The condition is that Attorney Davison's clients petition within 60 days to adopt Baby Boy Y. in Georgia under Georgia law or in their home state. The document further sets forth the quid pro quo for the contract in the form of Jennifer's relinquishment of her parental rights to Baby Boy Y. for the adopting parents' guarantee of providing the benefits of a good home for the child. Hs.' petition for adoption of Baby Boy Y. filed in this court on March 22, 1994 (attached as an addendum to this opinion) constituted a good faith acceptance of that offer, and in our view, created a contract.

Having determined that the documents Jennifer signed to relinquish her parental rights and whose terms

Hs. accepted were contractual in nature, we must next decide the contract's legal validity. Since the contract had contacts in both Pennsylvania and Georgia, as a Pennsylvania court, we first look to Pennsylvania law, including its conflicts of law provisions in order to make this determination. *Toter v. Knight,* 278 Pa. Super. 547, 420 A.2d 676 (1980). Pennsylvania follows the "flexible conflicts methodology" first adopted by the Pennsylvania Supreme Court for tort actions in *Griffith v. United Air Lines Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). The Pennsylvania Supreme Court in *Griffith* rejected the Restatement I approach to conflicts of laws issues and adopted a more flexible approach combining the Restatement (Second) "significant contacts" theory and with the interest analysis theory. *Id.* This new approach has since been called a "flexible conflicts methodology." *Melville v. American Home Assurance Company,* 584 F.2d 1306 (3rd Cir. 1978). The Pennsylvania Superior Court then extended this "flexible conflicts methodology" rule to contract actions in *Gillan v. Gillan,* 236 Pa. Super. 147, 345 A.2d 742 (1975). See *Melville.*

In applying the "flexible conflicts methodology" rule of *Griffith,* this court must therefore analyze the significant contacts Pennsylvania and Georgia have to this contract, as directed by Restatement (Second). At the same time we must make a qualitative appraisal of the relevant states' interests with respect to the contract as spelled out in section 6 of the Restatement. *Melville, supra* at 1311.[2]

---

2. The section 6 factors relevant to the choice of the applicable rule of law include: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interest of those states

Section 188 of the Restatement (Second) of Conflict of Laws in contracts requires:

"[2] In the absence of an effective choice of law by the parties (see section 187), the contacts to be taken into account in applying the principles of section 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Knauer v. Knauer,* 323 Pa. Super. 206, 215, 470 A.2d 553, 558 (1983) citing Restatement (Second) of Conflict of Laws §188 (1971).

Applying these contacts to the case at bar, we make the following findings: the offer to terminate parental rights was made in Georgia; the negotiations took place in both Georgia and Pennsylvania; the place of performance of the contract was in both Georgia and Pennsylvania with the mother surrendering Baby Boy Y. and terminating her parental rights in Georgia and Hs. adopting and raising the child in Pennsylvania; and Jennifer is a resident of Georgia and Hs. reside in Pennsylvania. The contacts here seem to be equally balanced between Pennsylvania and Georgia.

When the "significant contacts" are virtually balanced between the two states, other considerations become

in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." *Gillan, supra* at 151, 345 A.2d at 744.

relevant in applying section 6 factors to determine the appropriate substantive law. *Lindenbaum v. 1928 Company, t/a 1928 Jewelry Company,* 1989 WL 17554 (E.D. Pa.). In *Lindenbaum,* a breach of contract case, the contract at issue was formed in California. Plaintiff was a Pennsylvania resident, defendant a California corporation, and performance was required in several states, one of which was Pennsylvania. The court in *Lindenbaum* found that since the "significant contacts" were virtually equal between California and Pennsylvania, other considerations in section 6 of the Restatement became more important in determining which states' law should be applied. As did the *Lindenbaum* court, we now apply the states' interest factors set forth in section 6 of the Restatement seriatim:

## A. *The Needs of the Interstate*

The Restatement explains in its comment that the choice of law should meet the needs of the interstate by furthering harmonious relations between states. Restatement (Second) of Conflict of Laws §6 cmt. d (1971). Here the forms containing the terms and conditions of Jennifer's offer were the very forms provided by Georgia law to terminate parental rights (Ga. Code Ann. §19-8-26). Hs. accepted Jennifer's offer with the understanding that Georgia law would apply to the construction and validity of the contract. A Pennsylvania court recognizing the legal validity of the contract based on these documents would certainly further harmonious relations between Pennsylvania and Georgia.

## B. *Relevant Policies of the Forum*

Where people enter into contracts, with knowledge of the facts, it is Pennsylvania's policy to enforce the parties' contractual obligations regardless of the ques-

tionable wisdom of the bargain. *Mowry v. McWherter,* 365 Pa. 232, 74 A.2d 154 (1950).

### C. *Relevant Policies of Other Interested States*

It is Georgia's policy that "wherever possible, to uphold contracts and to uphold the capacity of one to enter into a contract." *Schumacher v. Sexton,* 455 S.E.2d 348 (Ga.Ct.App. 1995) citing *Faulkenberry v. Elkins,* 445 S.E.2d 283 (Ga.Ct.App. 1994).

### D. *Protection of Justified Expectations of Parties*

At the time the parties entered into this contract without question they expected Georgia law to govern. The Georgia documents, prepared by a Georgia lawyer and executed in Georgia by a Georgia resident and calling for an adoption proceeding in Georgia or in some other unnamed state clearly demonstrate that Jennifer and the Hs. expected that their agreement would be governed by Georgia law. Further, Hs. obtained the services of a Georgia lawyer to make sure that Georgia law relating to termination of Jennifer's parental rights was complied with to the letter and Jennifer agreed to this arrangement.

### E. *Basic Policies Underlying Particular Field of Law*

It is the underlying policy in contract law to protect the expectations bargained for. *Palco Linings Inc. v. Pavex Inc.,* 755 F. Supp. 1269 (M.D. Pa. 1990). Here, as stated above, the policy of both Pennsylvania and Georgia is to uphold valid contracts.

### F. *Certainty, Predictability, and Uniformity of Result*

As the Restatement comment points out, "These are important values in all areas of the law. To the extent

that they are attained in choice of law, forum shopping will be discouraged." Clearly both Pennsylvania and Georgia have an equal interest in upholding the validity of this contract and the finality of agreements to terminate parental rights. Applying Georgia law which provided the format for the contract would discourage forum shopping and bring more certainty and uniformity in these types of contract matters.

## G. *Ease in Determination and Application*

The Restatement explains that choice of law rules should be simple and easy to apply. Restatement (Second) of Conflict of Laws §6 cmt. j (1971). It is clear that both Pennsylvania and Georgia law relating to the validity of contracts are straightforward and easy to apply.

After reviewing the interests of Pennsylvania and Georgia in this contract, it is clear that the interests of both states are similar except for the protection of the justified expectation of the parties. This factor is the most significant and is entitled to more weight than the other factors because it is the basic policy underlying the law of contracts. Restatement (Second) of Conflict of Laws §188 cmt. b (1971). There is no question in our mind that when the contract was formed, both parties expected Georgia law to govern the contract. This factor tips the scales in favor of applying Georgia law in assessing the validity of Jennifer's contract.

We therefore turn to an examination of this contract under Georgia law. First, we find that the legal documents which Jennifer signed would, by themselves, constitute a relinquishment of her parental rights to Baby Boy Y. in Georgia and meet the underlying termination of parental rights requirement in an adoption proceeding. Sections 19-8-4 and 19-8-26 of the Code of Georgia

specifically provide that parental rights can be terminated by the execution of these legal forms.[3] Therefore, Jennifer's execution of these documents (surrender of rights—final release, mother's affidavit, and surrender of rights) constituted a termination of her parental rights to Baby Boy Y. and a consent to the adoption by the Hs. She would be foreclosed from repudiating her agreement unless she withdrew her consent within 10 days after execution. Jennifer failed to do this.

Secondly, section 19-7-1(b)(1) of the Code of Georgia provides that, "parental power may be lost by any of the ways recognized by law, including voluntary contract, releasing the right to a third party pursuant to Ga. Code Ann. §19-7-1(b)(1)."[4]

In *Faulkenberry v. Elkins,* 445 S.E.2d 283 (Ga.Ct. App. 1994) the highest court of Georgia applied this section in construing as a contract a "consent to adoption" form executed by a natural mother in a lawyer's office after adoption proceedings for her child began. (The consent form was not the formal legal documents

---

3. Section 19-8-4(a)(1) provides, in relevant part, "(a) a child who has any living parent or guardian may be adopted through the department or any child-placing agency only if each such parent and each such guardian:

"(1) Has voluntarily and in writing surrendered all of his rights to the child to the department or to a child-placing agency as provided in this code section. . . ."

Section 19-8-4(e)(1) provides, in relevant part, "(e)(1) The surrender by a parent or guardian specified in paragraph (1) of subsection (a) of this code shall meet the requirements of subsection (a) of code section 19-8-26" which sets forth the required relinquishment forms.

4. Section 19-7-1(b)(1) lists voluntary contracts as one of several ways to terminate parental rights. It clearly states:

"(b) Parental power shall be lost by:

"(1) Voluntary contract releasing the right to a third person; . . . ."

required by section 19-8-26 of the Georgia Code.) The Georgia court ruled that as long as the evidence established a clear, definite and unambiguous contract, then section 19-7-1(b)(1) permitted the termination of a mother's parental rights. The Georgia court refused to permit the natural mother to disavow her contract and dismissed her petition to set aside the adoption. *Id.*

As we have previously pointed out, Jennifer's offer to surrender Baby Boy Y. for adoption and to relinquish her parental rights to Hs. using the Georgia parental relinquishment forms and acceptance of that offer by Hs.' filing their adoption petition constitutes a contract which is unarguably precise and certain. We conclude that, under Georgia law, on March 22, 1994, the date Hs. filed their adoption petition there came into existence, a valid binding and enforceable contract to relinquish Jennifer's parental rights to Baby Boy Y. As the court ruled in *Faulkenberry, supra,* we also hold that Jennifer's execution of the section 19-8-26 documents in Georgia and Hs.' adoption proceeding in Pennsylvania constituted a valid binding contract under Georgia law.

Although not required to do so, we would reach the same result if we applied Pennsylvania law. The Superior Court of Pennsylvania in *Gorden v. Cutler,* 324 Pa. Super. 35, 471 A.2d 449 (1983) reviewed an agreement similar to the one in the instant case. In *Gorden* there was an oral agreement between the natural parents and the adopting parents in which the natural parents agreed to consent to an adoption in return for the adopting parents paying for the mother's lying-in expenses and medical bills for the birth of her child. The Superior Court held that a valid, enforceable contract had been entered into by the parties, and when the contract was

breached by the natural parents, the adopting parents were entitled to the return of their lying-in expenses. The agreement in *Gorden* was an oral agreement which was only partially documented in a letter from the adopting parents' counsel to the natural mother wherein he assured her that the medical bills would be paid. The Superior Court concluded that although the agreement was a verbal agreement, there was sufficient evidence of the requisite offer, acceptance, and consideration needed to constitute a contract. The court further held that the Gorden-Cutler contract did not violate public policy because the consideration provided by the adopting parents was beneficial only to the child. Had the consideration been some form of financial gain benefitting the natural parents, then said the Superior Court, that contract would have been invalid for public policy reasons.

Here as in *Gorden,* the natural mother agreed to surrender her child for adoption and relinquish her parental rights in consideration for Hs. petitioning to adopt the baby and to bestow upon him the benefits and advantages of a good home. Unlike *Gorden,* this court has more substantial evidence to rely on than testimony of a verbal agreement partially referenced in a letter. This court has before it Jennifer's clear and unequivocal signed offer to terminate her parental rights and an acceptance of that offer by Hs. If we applied Pennsylvania law, we would hold that there is a legal binding contract between Jennifer and Hs. This contract, like the one in *Gorden,* does not violate public policy because the consideration provided by Hs. is for the child's benefit only.

The only remaining issue then is whether Jennifer entered into the contract voluntarily. Here again we must apply Georgia law because the issue relates to

the validity of the contract. The Georgia Court of Appeals has held that, "Where the parental authority over an infant child is released to another, such release is not revocable unless some sufficient legal reason is shown therefor. *A mere change of mind on the part of the parent consenting is not such legal cause as will revoke the consent.*" *Id.* at 287 citing *Sessions v. Oliver,* 50 S.E.2d 54 (1948). (emphasis supplied)

In the case sub judice, Jennifer claims that she signed the documents relinquishing her parental rights because she was afraid that her mother would no longer let her reside in her mother's home. Jennifer testified that she now lives in Augusta, Georgia, but when asked a second time where she lived she stated Evans, Georgia; that she was living in her mother's home in Dublin, Georgia in 1993; when her mother learned of her pregnancy sometime in November of 1993, her mother told her that if Jennifer did not give up the child she would not be welcome to continue living in her mother's house. A week later, Jennifer moved out of her mother's home. Jennifer also testified that in December of 1993 she was allowed to move back in with her mother, which she did, without any promises of financial reward or gain and prior to her making any type of arrangements for the baby. Jennifer further said that her mother later promised her that if she consented to the adoption of her child, her mother would continue to provide her with a place to live and would help pay for her college education.

Mrs. G., Jennifer's mother, testified that she never threatened Jennifer or exerted pressure on her to place the baby up for adoption, but that the decision to give the baby up was entirely Jennifer's. Mrs. G. stated that Jennifer asked her to contact Jennifer's Aunt Helen about finding a couple to adopt the baby. Mrs. G. further

testified that she had offered to help Jennifer in whatever way she could once the baby was born. Mrs. G. denied offering to pay for Jennifer's college education in exchange for her giving up the baby. She testified that prior to Jennifer's pregnancy she had already registered Jennifer for college twice before at two different colleges and both times Jennifer refused to attend.

When asked to comment on Jennifer's reputation for truthfulness, Mrs. G. testified that Jennifer had lied to her on several occasions ranging from where she was staying and with whom, where she was working, with whom she was spending her time, and whether she was actually going to school.

We find Jennifer's testimony of duress improbable, inconsistent, and wholly unworthy of belief. She inconsistently and implausibly testified that her mother told her she would have to move out of the house if she did not give up the baby, then after moving out for a few weeks, she moved back in without making any promises to her mother. She also stated that her mother offered her a college education if she gave up the baby, but was directly contradicted by her mother who said she had offered Jennifer a college education twice before her pregnancy and she refused.

We credit Mrs. G.'s testimony because she had no motive to lie or hide the truth. Her testimony was straightforward, accurate and honest. What she told us made sense and that is that Jennifer is lying as she had done on many other occasions; that at no time did she force her to make any decision with respect to her baby; that she signed all of the legal documents willingly and with full knowledge of the consequence; and that the first time she ever heard Jennifer talk about duress was after she changed her mind about giving up Baby Boy Y. Accordingly we find that Jennifer entered the contract with Hs. voluntarily.

It is Georgia's policy that "wherever possible, to uphold contracts and to uphold the capacity of one to enter into a contract." *Schumacher v. Sexton, supra, citing Faulkenberry, supra.* It is the opinion of this court that under Georgia law Jennifer's parental rights to Baby Boy Y. were terminated on the date Hs. petitioned for adoption. Ga. Code Ann. §§19-8-4, 19-8-26 (1990). Moreover, we find that Jennifer executed this contract voluntarily. Accordingly, this court will uphold the contract between Jennifer and Hs. and will not permit Jennifer to repudiate that contract.

Were this proceeding conducted in Jennifer's home court of Georgia, we have no doubt that this petition would be denied. Because the Hs. chose to bring Baby Boy Y. to Pennsylvania rather than to remain in Georgia for the adoption proceeding, the end result should be the same.

For the foregoing reasons, we enter the following order of court.

## ORDER

And now October 31, 1995, it is hereby ordered and decreed that the petition to revoke consent is hereby denied and dismissed.

---

## ADDENDA

## SURRENDER OF RIGHTS

## FINAL RELEASE FOR ADOPTION

## NOTICE TO PARENT OR GUARDIAN:

This is an important legal document and by signing it you are surrendering all of your right, title and claim

to the child identified herein, so as to facilitate the child's placement for adoption. You are to receive a copy of this document and as explained below have the right to withdraw your surrender within 10 days from the date you sign it.

---

I, the undersigned, being solicitous that my male child, born Baby Boy Y. on February 18, 1994, should receive the benefits and advantages of a good home, to the end that he may be fitted for the requirements of life, consent to this surrender.

I, the undersigned, mother of the aforesaid child, do hereby surrender the child to Vincent M. Davison Jr., Attorney at Law, as representative of the adoptive parents, PROVIDED such persons file a petition for adoption of the child in accordance with chapter 8 of title 19 of the Official Code of Georgia Annotated or in accordance with the laws of their home state, within 60 days from the date hereof. Furthermore, I promise not to interfere in the management of the child in any respect whatever; and, in consideration of the benefits guaranteed by the adoptive parents in thus providing for the child, I do relinquish all right, title and claim to the child herein named, it being my wish, intent and purpose to relinquish absolutely all parental control over the child.

It is also my wish, intent and purpose that if each such person is not named as petitioner in a petition for adoption as provided for above within the 60 day period, other than for excusable neglect, then I do hereby surrender the child to the Department of Human Resources for placement for adoption; and the Department of Human Resources may petition the Superior Court

for custody of the child in accordance with the terms of this surrender.

Furthermore, I hereby agree that the child is to be adopted either by each person named above or by any other such person as may be chosen by the Department of Human Resources and I do expressly waive any other notice or service in any of the legal proceedings for the adoption of the child.

Furthermore, I understand that under Georgia law, the Department of Human Resources or a similar agency in the state of residence of the adoptive parents is required to conduct an investigation and render a report to the court in connection with the legal proceeding for the legal adoption of the child and I hereby agree to cooperate fully with such department in the conduct of its investigation.

Furthermore, I hereby certify that I have received a copy of this document and that I understand I may only withdraw this surrender by giving written notice, delivered in person or mailed by registered mail, to Vincent M. Davison Jr., Attorney at Law, 211 Pleasant Home Road or Post Office Box 211065, Augusta, Georgia 30917, within 10 days from the date hereof; that the 10 days shall be counted consecutively beginning with the day immediately following the date hereof; however, if the tenth day falls on a Saturday, Sunday or legal holiday, then the last day on which the surrender may be withdrawn shall be the next day that is not a Saturday, Sunday or legal holiday; and I understand that it may NOT be withdrawn thereafter.

Furthermore, I hereby certify that I have not been subjected to any duress or undue pressure in the execution of this surrender document and do so freely and voluntarily.

WITNESS my hand and seal this 19th day of February, 1994.

/s/ Jennifer Ann Y.
JENNIFER ANN, PARENT

---

## MOTHER'S AFFIDAVIT

### EXHIBIT "A"

NOTICE TO MOTHER:

This is an important legal document which deals with your child's right to have its father's rights properly determined. You have the right not to disclose the name and address of the biological father of your child; however, should you decline to provide such information, understand that you may be required to appear in court to explain your refusal or that your name may be used in connection with the publication of notice to the biological father. Understand that you are providing this affidavit under oath and that the information provided will be held in strict confidence and will be used only in connection with the adoption of your child.

STATE OF GEORGIA

COUNTY OF RICHMOND

PERSONALLY appeared before me, the undersigned officer duly authorized to administer oaths, JENNIFER ANN Y., who, after having been sworn, deposes and says as follows:

That my name is JENNIFER ANN Y.

That I am the mother of a male child born Baby Boy Y. in the State of Georgia, County of Richmond, on February 18, 1994.

That I am 18 years of age, having been born in Lehighton, Pennsylvania, on December 5, 1975.

That my marital status is:

(X) Single, never having been married.

That the name and last known address of the biological father of my child is:

Known to me and is JOHN L.B., 3748 Tailboard Way, Martinez, Georgia 30907.

That the child's biological father, whether or not identified herein:

Was not married to me at the time the child was conceived or was born, and his paternity has not been disproved by a final paternity order of a court;

Did not marry me after the child was born and recognize the child as his own, and his paternity has not been disproved by a final paternity order of a court;

Has not been determined to be the child's father by a final paternity order of a court; and

Has not legitimated the child by a final court order.

That the biological father of my child:

Has not lived with the child;

Has not contributed to its support;

Has not provided for my support (including medical care) during my pregnancy or hospitalization for the birth of the child; and

Has not made any attempt to legitimate the child.

That I have received or been promised the following financial assistance, either directly or indirectly, from whatever source, in connection with my pregnancy, the birth of my child, and its placement for adoption: none.

That I recognize that if I knowingly and willfully make a false statement in this affidavit, I will be guilty of the crime of false swearing.

/s/Jennifer Ann Y.
JENNIFER ANN Y., MOTHER

## ACKNOWLEDGMENT OF
## SURRENDER OF RIGHTS

By execution of this paragraph, the undersigned expressly acknowledges:

(A) That I have read the accompanying SURRENDER OF RIGHTS/FINAL RELEASE FOR ADOPTION relating to said minor child born Baby Boy Y., a male, on February 18, 1994;

(B) That I understand that this is a full, final and complete surrender, release and termination of all of my rights to the child;

(C) That I have the unconditional right to revoke the surrender by giving written notice, delivered in person or mailed by registered mail, to Vincent M. Davison Jr., Attorney at Law, 211 Pleasant Home Road, Post Office Box 211065, Augusta, Georgia 30917, not later than 10 days from the date of the surrender and that after such 10 day period I shall have no right to revoke the surrender:

(D) That the 10 days shall be counted consecutively beginning with the day immediately following the date the surrender is executed; however, if the tenth day falls on a Saturday, Sunday or legal holiday then the last day on which the surrender may be withdrawn shall be the next day that is not a Saturday, Sunday or legal holiday;

(E) That I have read the accompanying surrender and received a copy thereof;

(F) That any and all questions regarding the effect of said surrender and its provisions have been satisfactorily explained to me;

(G) That I have been afforded an opportunity to consult with counsel of my choice prior to execution of the surrender; and

(H) That the surrender of my rights has been knowingly, intentionally, freely and voluntarily made by me.

Witness my hand and seal this 19th day of February, 1994.

/s/Jennifer Ann Y.
JENNIFER ANN Y., PARENT

---

IN THE COURT OF COMMON PLEAS OF CARBON COUNTY, PENNSYLVANIA

ORPHANS' COURT DIVISION

IN RE: ADOPTION OF BABY BOY Y.

NO. 94-9095

PETITION

TO THE HONORABLE, THE JUDGES OF SAID COURT:

This petition respectfully represents that:

(1) The names of petitioners are as follows: Joseph W.H. and Kathy Jane H., his wife.

(2) The locations and dates of residence of petitioners for two years prior hereto are as follows: 533 West Sunset Road, Lehighton, Pennsylvania 18235

(3) The marital status of petitioners is as follows: Joseph W.H. and Kathy Jane H. are husband and wife, being married on July 4, 1987.

(4) The names, ages, and residence of any children of petitioners are as follows: Benjamin Jacob H., born May 28, 1993.

(5) The age and birthdate of petitioners are as follows:
Joseph W.H., born November 24, 1954, age 39.
Kathy Jane H., born February 5, 1956, age 38.

(6) The occupation, employer, and annual income of petitioners are as follows:
Joseph W.H., supervisor of plant operations, Lehighton Area School District, Lehighton, Pennsylvania, with an income of approximately $32,000 per year.
Kathy Jane H., registered nurse, St. Luke's Hospital, Bethlehem, Pennsylvania, with an income of approximately $42,000 per year.

(7) The state of health of petitioners is as follows:
Joseph W. H. and Kathy Jane H., his wife, are in excellent health.

(8) The religious affiliation of petitioners is as follows:
Joseph W. H. and Kathy Jane H., his wife, petitioners, are Christian (Lutheran).

(9) The racial background of petitioners is as follows:
Joseph W. H. and Kathy Jane H., his wife, petitioners, are caucasian.

(10) The relationship of adoptee to petitioners is as follows:

None.

(11) The report of intention to adopt is intended to be filed even date herewith with the Carbon County Court of Common Pleas.

(12) The report of the intermediary is not required as no intermediary is involved.

(13) The full name of the adoptee is as follows:
Samuel Y. born to Jennifer Ann Y., natural mother, and John L.B., natural father.

(14) The adoptee has resided with petitioners from and after his discharge from Augusta Regional Medical

Center in Augusta, Georgia on February 19, 1994 to date.

(15) If there is no intermediary, or if adoptee is over the age of 18, the following information shall be provided: There is no intermediary and the adoptee is not over the age of 18.

(a) Adoptee's sex: Male

(b) Adoptee's racial background: Caucasian

(c) Adoptee's age and date of birth: February 18, 1994

(d) Adoptee's place of birth: Augusta Regional Medical Center, Augusta, Georgia

(e) Adoptee's religious affiliation: Undetermined

(f) Attached hereto and intended to become a part hereof and marked collectively as Exhibit "A" is surrender of rights—final release for adoption executed by Jennifer Ann Y.; acknowledgment of surrender of rights executed by Jennifer Ann Y.; and mother's affidavit executed by Jennifer Ann Y.

(g) Attached hereto and intended to become a part hereof and marked collectively as Exhibit "B" is surrender of rights—final release for adoption executed by natural father, John L.B. and acknowledgment of surrender of rights executed by John L.B.

(h) The name and last-known address of any natural parent of adoptee whose parental rights have been terminated:

See 15 (f) and (g) which are incorporated herein as though the same were more fully set forth at length.

(i) An itemized accounting of monies, fees and expenses paid or to be paid to counsel or any other fees, costs or expenses paid or to be paid to an intermediary or any other person or institution in connection with the adoption:

Counsel fees to be paid to Christopher T. Spadoni, Esquire, attorney for petitioners, having an address of 1216 Linden Street, Bethlehem, Pennsylvania 18018. Pa. I.D. no. 24817 in the approximate amount of $4,000.

Counsel fees to be paid to Vincent M. Davison Jr., Attorney-at-Law, having an address of P.O. Box 211065, Augusta, Georgia 30917 in the approximate amount of $1,000.

(j) A full description and statement of the value of all property owned or possessed by adoptee:

None.

(16) If petitioners desire to change adoptee's name, adoptee's new name shall be as follows:
Samuel Noah H.

(17) Petitioners desire that the relationship of parent and child be established between them and the adoptee.

(18) The following consents necessary for adoption are attached hereto as exhibits (if any of the following consents are not required, explain why such consents are not required):

(a) The consent of adoptee is not required as adoptee is not over the age of 12.

(b) The consent of the natural mother, Jennifer A. Y., is attached hereto and marked as Exhibit "A."

(c) The consent of the natural father, John L.B., is attached hereto and marked as Exhibit "B."

(d) The consent of the guardian is not required as the adoptee is not incompetent.

(e) The adoptee has no guardian, and the person or persons having custody of the adoptee are the petitioners in this petition for adoption.

(19) Petitioners request your honorable court to:

(a) Allow the adoption by petitioners of Baby Boy Y.

(b) Declare that adoptee shall have the rights of a child and heir of petitioners and shall be subject to all the duties of such a child; and

(c) Allow adoptee to assume the name of Samuel Noah H.

Respectfully submitted,

/s/Christopher T. Spadoni
Christopher T. Spadoni, Esquire
Pa. I.D. No. 24817
1216 Linden Street
Bethlehem, Pennsylvania 18018
(215) 867-3938

---

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF NORTHAMPTON

Before me, the undersigned officer, personally appeared JOSEPH W. H. and KATHY JANE H., his wife, who, being duly sworn according to law, depose and say that they are the petitioners in the above-entitled proceedings and that the facts set forth in the foregoing petition are true and correct to the best of their knowledge, information and belief.

/s/Joseph W. H.
Joseph W. H.

/s/Kathy Jane H.
Kathy Jane H., his wife