In the matter of Una Sue
ANDERSON, Debtor.

No. 06–60188.

United States Bankruptcy Court,
S.D. Georgia,
Statesboro Division.

Oct. 12, 2006.

Angela McElroy–Magruder, Augusta, GA, for Debtor.

Joel Paschke, Office of U.S. Trustee, Savannah, GA, for U.S. Trustee.

### MEMORANDUM AND ORDER ON DEBTOR'S MOTION TO DISMISS HER CHAPTER 7 CASE

LAMAR W. DAVIS, JR., Bankruptcy Judge.

The Debtor filed this Chapter 7 case on May 10, 2006. She has now filed a motion to dismiss her case. *See* Dckt. No. 32 (September 6, 2006). The United States Trustee filed an objection to the Debtor's motion. *See* Dckt. No. 39 (September 20, 2006). A hearing on this matter was held on September 21, 2006, at which the case Chapter 7 Trustee also raised an objection to the Debtor's motion. After considering the evidence provided by the parties and the arguments presented, I make following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Debtor has a history of serious medical problems. She has suffered from the effects of cancer and arthritis as well as two hip surgeries. In addition, the Debtor is to have surgery on her neck. She takes strong medications to fight the pain stemming from these medical problems. The Debtor contends that at the time this case was filed, she was heavily medicated in such a way that she could not make rational decisions and was not aware of what she was doing. Furthermore, she claims that she was heavily medicated at the three meetings of creditors that she attended as required by 11 U.S.C. § 341.[1]

At the September 21, 2006, hearing, the Debtor's husband testified that he had to

---

1. Hereinafter, all Section references are to Title 11 of the United States Code.

take an active role in caring for the Debtor due to her medical problems and chronic pain. He testified that on the day the Debtor filed this Chapter 7 case, she called him to come pick her up and take her home. She had attempted to drive home from her bankruptcy lawyer's office but was unable to safely drive her truck because she was heavily medicated. When he picked up the Debtor, she had to leave her truck in a parking lot, and she appeared to be on the "spacey side," experiencing a lot of pain. He testified that until that day, he was unaware that the Debtor intended to file a Chapter 7 case.

The Debtor also presented the expert testimony of Dr. Henry Purvis, whose specialty is in family practice. The Debtor has been a patient of Dr Purvis for the last two years. He testified that in May 2006, the Debtor had lymphoma, arthritis in her neck and left arm, and a hip replacement. He testified that all of these conditions led the Debtor to experience chronic pain. The Debtor had been prescribed hydrocodone from an oncologist and an orthopedist as well as a muscle relaxer from the orthopedist. Dr. Purvis testified that common side effects of the doses prescribed for the Debtor would include sedation, confusion, lethargy, and impaired physical and mental ability. He testified that it would be difficult for the Debtor to make rational decisions about her finances while on the medications and doses prescribed for her. Dr. Purvis admitted on cross-examination, however, that people can have a variety of different reactions to these drugs. Furthermore, he testified that he did not observe the Debtor on May 10, 2006, or on the dates when she attended the three meetings of creditors held on June 7, 2006, July 5, 2006, and August 2, 2006.

A review of the tape of the Debtor's first meeting of creditors on June 7, 2006, revealed that she was placed under oath, stated her name and address, and admitted that she had read and signed all the relevant documents in her case. She also stated that she believed the information contained in her schedules to be accurate. The Debtor stated that she filed this Chapter 7 case due to health issues and that she had badly managed her credit card accounts. The Debtor's schedules, later amended, omitted her interests in a variety of parcels of real property. The Chapter 7 Trustee discovered these interests, and when she confronted the Debtor with this discovery at the meeting, the Debtor readily admitted her ownership interests and stated that she would file amendments to her schedules. She was able to clarify the different proportionate interests she owned in several parcels of real estate without any delay or confusion. At two subsequent meetings of creditors on July 5, 2006, and August 2, 2006, the Debtor also appeared entirely coherent and able to interact and understand what was happening at those meetings. While the Debtor came to those meetings with a cane, the Chapter 7 Trustee testified that she did not appear to be in any worse condition than many of the debtors she sees on a regular basis.

### CONCLUSIONS OF LAW

■ Pursuant to Section 707, this Court has the discretion to dismiss the Debtor's Chapter 7 case. *See Turner v. Johnson (In re Johnson)*, 318 B.R. 907, 912 (Bankr.N.D.Ga.2005)("Dismissal of a petition, particularly for bad faith or lack of good faith, is within the discretion of the bankruptcy court, and the court must balance the equities and consider the benefits and prejudice of dismissal."). That discretion is limited, however, by the requirements of the Code, which allows dismissal only after a notice and a hearing and only for cause. *See* 11 U.S.C. § 707(a); *In re Martin*, 30 B.R. 24, 26 (Bankr.E.D.N.C.

1983)("A debtor in [Chapter 7] is not automatically entitled to dismiss his voluntary petition."). Although Section 707(a) provides a list of examples of cause, this list is only illustrative and cause to dismiss may exist on other grounds and in other situations. *In re Johnson,* 318 B.R. at 910. The party moving for dismissal has the burden of proving that cause exists. *Dionne v. Simmons (In re Simmons),* 200 F.3d 738, 743 (11th Cir.2000).

■■■ The Debtor argues that her incompetency and inability to make rational decisions concerning her finances constitutes cause for dismissal of her Chapter 7 case. In determining a debtor's competency to file a bankruptcy case, this Court looks to the standards set by Georgia law. Under Georgia criminal law, a defendant is competent to stand trial if he "is capable at the time of the trial of understanding the nature and object of the proceedings going on against him and rightly comprehends his own condition in reference to such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands." *Lewis v. State,* 279 Ga. 69, 70, 608 S.E.2d 602, 606 (2005). Furthermore, concerning the issues of competency and the ability to enter a contract in Georgia, courts have stated the following:

> Where it is contended that one who executed a contract was not competent to execute it, the burden is upon her who asserts the incompetency. Mental or physical impairment is never presumed. It must be proved. In order to void a contract on the ground of mental incapacity of the maker, she must have been *non compos mentis,* that is, entirely without understanding, at the time

the contract was executed. It is also the policy of Georgia law, wherever possible, to uphold contracts and to uphold the capacity of one to enter into a contract. Further, even proof of a temporary loss of sanity or competency would create no presumption that it continued up to the time of execution of the contract, and the burden remains on the party alleging incapacity to show such incapacity at the very time of the transaction.

*Faulkenberry v. Elkins,* 213 Ga.App. 472, 474–75, 445 S.E.2d 283, 286 (1994).

■■■ Based on the evidence presented by the parties, I conclude that the Debtor has not met her burden.[2] Rather, I conclude by a preponderance of the evidence that the Debtor understood the consequences of her actions when she filed this Chapter 7 case and when she attended three meetings of creditors. The tape played by the Chapter 7 Trustee at the September 21, 2006, hearing revealed the Debtor to be coherent, stable, and aware of the situation she found herself in. She knew her name and address and confirmed that the information in her schedules was correct to the best of her knowledge. The Debtor described her health issues and credit card debt as the factors that led her to file for bankruptcy protection. When confronted by the Chapter 7 Trustee with her interests in real property that were not listed on her original bankruptcy schedules, the Debtor articulately and clearly identified each of her interests. The Chapter 7 Trustee testified that at the July 5, 2006 meeting of creditors, the Debtor gave the appearance of being aware of why she was there and discussed in detail a timber contract concerning

---

2. Because I conclude that the Debtor qualifies as competent under Georgia's standard for criminal defendants to stand trial as well as its standard for individuals seeking to enter into a contract, this Court does not today decide whether one standard in particular is the exclusive standard to evaluate a debtor's competency to file a bankruptcy case.

some of the real property in which she held an interest.

While his testimony was persuasive and insightful, Dr. Purvis admitted that he did not observe the Debtor on the day she filed this Chapter 7 case, and he did not observe the Debtor on the days she attended her meetings of creditors. He admitted that the drugs and painkillers prescribed to the Debtor do not have uniform side effects on everyone and that different people can experience a variety of symptoms. Like Dr. Purvis's testimony, the Court finds the testimony of the Debtor's husband to also be persuasive and compelling. The Court concludes that it is highly likely that the Debtor suffered some form of side effects as a result of her medications. However, this testimony does not satisfy the Debtor's burden of establishing incompetency on the dates in question, especially in light of the recordings concerning the Debtor's appearance at her meetings of creditors.

Although the Debtor may still seek permission to dismiss this Chapter 7 case, "[where] a voluntary dismissal would prejudice creditors, it will ordinarily be denied." *In re Williams*, 15 B.R. 655, 658 (E.D.Mo.1981). The Debtor contends that a sale of her interests in various parcels of real property outside of bankruptcy would be the most effective and cost-efficient way to satisfy her unsecured creditors' claims. She asserts that the value of her interests in these properties are more than sufficient to satisfy 100% of her creditors' claims. The bankruptcy court in *In re Martin* confronted a similar request by a debtor, who argued that creditors would not be prejudiced if allowed to pursue their state law rights and remedies outside of bankruptcy. 30 B.R. at 26. The bankruptcy court denied the debtor's request, stating that it provided a more convenient and expedient forum to scrutinize the debtor's transfer of assets across state lines. Furthermore, even "if there were no possibility of an interstate inquiry, the delay and added costs involved in the pursuit of their state court discovery rights would constitute prejudice to creditors." *Id.* at 27.

The Debtor's bankruptcy schedules reveal her to have one unsecured creditor in Dallas, Texas, and four unsecured creditors in Wilmington, Delaware. In addition, the Debtor's amended schedules indicate that she has at least ten (10) proportionate interests in a variety of parcels of real property. The schedules do not indicate where this real property is located. These facts lead this Court to conclude that it currently remains the proper forum to resolve all pre-petition claims against the Debtor and to prevent a potentially chaotic and disorderly scramble for assets by the Debtor's unsecured creditors.

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Debtor's motion to dismiss this Chapter 7 case is DENIED.